STATE BANK OF FREEPORT, Respondent v.
CAPE GIRARDEAU & CHESTER RAILROAD
COMPANY, Appellant.

**St. Louis Court of Appeals, April 8, 1913.**

1. **SALES: Warranty: Contract Construed: "Specifications."** A contract for the sale of a motor car provided that the car was "to be built in accordance with specifications heretofore agreed upon." A previous contract for the sale of another car provided that the vendee agreed to purchase a car, "as specified in letter of vendor." The letter constituted a proposal to furnish a car in accordance with plans and specifications attached, and contained the following provision: "We hereby give you a guarantee that will cover renewal of any part of mechanism on car which may prove to be defective during the first year," etc. The specifications attached to the letter described in detail the construction of the car. *Held*, that the word "specifications," as used in the last contract, was not intended to include all the terms and conditions specified in the first contract, including the warranty, but referred only to the separate list of particulars respecting the construction of the first car, by which the second car was to be built, so that there was no warranty to renew defective parts, as to the second car.

2. **CONTRACTS: Construction.** A word used in a contract is to be taken in the sense in which it was evidently intended to be used, having regard to the immediate context, and in the light of the surrounding circumstances.

3. **BILLS AND NOTES: Rights of Bona Fide Purchaser.** The construction of a contract of sale by the seller and the buyer, as shown by their subsequent correspondence or acts concerning it, is not binding upon the transferee of a note given by the buyer for the purchase price, who had no notice of such construction.

4. ———: ———: **Collateral Security for Antecedent Debt.** Under Secs. 9996 and 9998, R. S. 1909, an existing antecedent debt affords sufficient consideration to make one accepting a negotiable instrument, before maturity, as collateral security for such antecedent debt, a holder for value.

5. ———: ———: **Constructive Notice of Infirmity.** Under Sec. 10026, R. S. 1909, to constitute notice of an infirmity in an instrument or defect in the title of the person negotiating the same, a mere suspicion of such infirmity or defect, on the

part of the person to whom it is negotiated, or knowledge of facts that would ordinarily put one on inquiry, is not sufficient, but it must appear that the transferee had actual knowledge thereof.

6. ———: ———: Infirmity. A person taking notes given to the seller of goods, accompanied by the contract of sale, is chargeable with any infirmity in the note or, any equity existing in favor of the buyer growing out of such contract.

7. ———: ———: Notice of Infirmity. The mere fact that the cashier and one director of a bank became directors of a corporation which pledged notes with the bank, representing an estate of which they were executors, and that the third executor was one of the attorneys for both the bank and the corporation, had no tendency to prove bad faith on the part of the bank in taking the notes, nor knowledge of any infirmity therein, growing out of dealings between the corporation and the maker.

8. TRIAL PRACTICE: Contracts: Interpretation of Written Instrument. It is the province of the court, and not the jury, to interpret a written instrument.

9. ———: Directing Verdict for Plaintiff. In an action on a note, where there is no evidence to support the defenses pleaded, it is proper to direct a verdict for plaintiff.

Appeal from Cape Girardeau Circuit Court.—*Hon. Charles B. Faris*, Judge.

AFFIRMED.

*Giboney Houck* and *Davis & Hardesty* for appellant.

(1) The court erred in construing the contract and in excluding evidence relevant thereto. Greenlief on Evidence (16 Ed.), sec. 288, 277, 278, 280; 295a; 7 Cyc. 582; 9 Cyc. 588, 578, 582, 583, 587, 588, 590; McManns v. Gregory, 16 Mo. App. 375. (2) The court erred in excluding evidence as to the defects constituting a breach of the guaranty. Buckley v. Kansas City, 95 Mo. App. 188; Cogen v. Railroad, 101 Mo. App. 179; Reed v. City of Mexico, 101 Mo. App. 155. (3)

The court erred in excluding evidence on the issue of
bad faith and in refusing to submit such issue to the
jury.   Dixon v. Bank, 149 Mo. App. 585; Bank v.
Schaumberg, 38 Mo. 243; Cotton Mills v. Indian Or-
·chard Mills, 17 N. E..496; Story on Agency, sec. 140;
Purdy's Beach on Corporations, sec. 769; Lowndes v.
Bank, 22 L. R. A. (N. S.) 414; Re-Carew, 31 Beav. 39;
Loring v. Brodie, 134 Mass. 453; R. S. 1909, secs. 9999,
10024, 10025, 10026; Coleman v. Stocke, 159 Mo. App.
·43; Goodman v. Simonds, 61 U. S. 343; Bank v. Diefen-
·dorf, 10 L. R. A. (N. Y.) 676; Richmond v. Ashcraft,
137 Mo. App. 191; Hamilton v. Marks, 63 Mo. 167;
Link v. Jackson, 158 Mo. App. 63; Whaley v. Neill, 44
Mo. App. 316; Studebaker v. Dixon, 70 Mo. 272; Ed-
·wards v. Thomas, 66 Mo. 468; Cass Co. v. Green, 66
Mo. 498; Bank v. Phillips, 22 Mo. 85; 8 Cyc. 36;
·Gamache v. Grim, 23 Mo. 39.  ·(4) The court erred in
·excluding evidence on the issue of notice and in refus-
ing to submit such issue to the jury.   Bank v. Phillips,
22 Mo. 85; Henry v. Sneed, 99 Mo. 423; Secs. 9999,
10024, 10026, R. S. 1909; Link v. Jackson, supra; 7 Cyc.
·948; 8 Cyc. 36; Whaley v. Neill, 44 Mo. App. 316;
·Studebaker v. Dixon, 70 Mo. 272; Edwards v. Thomas,
·66 Mo. 468; Cass Co. v. Green, 66 Mo. 498; Gamache
v. Grim, 23 Mo. 38; Bank v. Schaumburg, 38 Mo. 243;
Mills v. Mills, 17 N. E. 496.   (5)   The court erred in
peremptorily directing the verdict for plaintiff.  Black
v. Epstein, 221 Mo. 286; Buckley v. Kansas City, 95
Mo. App. 188; Cogen v. Railroad, 101 Mo. App. 179;
Reed v. City of Mexico, 101 Mo. App. 155; Link v.
·Jackson, supra; Hamilton v. Marks, 63 Mo. 80; Secs.
10025-10029, R. S. 1909; Dyer v. Tyrell, 142 Mo. App.
·467; Dunlap v. Chemical Works, 159 Mo. App. 49.

*Stearns & Zipe* and *Oliver & Oliver* for respond-
·ent.

(1)   A note transferred before maturity to a
holder in due course, as collateral security for a pre-

existing debt, is transferred for value, and the holder
takes it free from defenses or set-offs existing be-
tween the original parties. Ogden on Negotiable In-
struments, sec. 128; Bank v. Morris, 156 App. 43;
Trust Co. v. Marker, 179 Fed. 764; Sec. 9996, R. S.
1909; Melton v. Bank & Trust Co., 190 Fed. 126. (2)
Neither suspicion of defect of title, circumstances
which in a prudent man would excite suspicion, nor
gross negligence, will defeat the title of one who takes
negotiable paper for a valuable consideration. This
result can be obtained only by proof of actual knowl-
edge or bad faith. Sec. 10026, R. S. 1909; Reeves v.
Letts, 143 Mo. App. 195; Ringling v. Kahn, 4 Mo.
App. 62; Bank v. Leeper, 121 Mo. App. 688. (3)
Plaintiff who took these notes as a holder in due course
could not be affected by any subsequent notice of de-
fendant's rights, even of the most positive character.
Fitzgerald v. Barker, 96 Mo. 663; Hagerman v. Sut-
ton, 91 Mo. 532. (4) Whether or not a "guaranty"
existed in this case depends upon the construction
given to the so-called "car agreement;" the construc-
tion of that agreement was a question of law for the
court and the court by its rulings held that there was
nothing in the agreement that could be tortured into
a "guaranty" or warranty. In so holding the court
did not err. State to use, Early v. Lefaivre, 53 Mo.
470; Chapman v. Railroad, 114 Mo. 542; Rogers v.
M. B. A., 131 Mo. App. 353; Goodman v. Simmons,
61 W. S. 343, 15 L. Ed. 941. (5) The so-called car
agreement (Exhibit 1) does not contain, set out, men-
tion nor refer to any guaranty. To have so construed
the agreement as to have held that there was incorpo-
rated within it a guaranty would have been the mak-
ing of a new contract between the parties. The rul-
ing of the trial court in this question was clearly
correct. Keaton v. Broughton, 83 Mo. App. 165; Meyer
v. Christopher, 176 Mo. 594; Walker v. Automobile
Co., 124 Mo. App. 636. (6) Knowledge obtained by

an officer of a corporation in a capacity other than that in which he is the agent of or representing the corporation, is not the knowledge of or notice to the corporation. This is the rule though the officer obtaining the knowledge was, at the time, the managing officer of the corporation. Bank v. Fitze, 70 Mo. App. 356; Bank v. Froman, 129 Mo. 427; Benton v. Bank, 122 Mo. 339; Investment Co. v. Bruce, 132 Mo. App. 257. (7) Since there was no substantial evidence to show the existence of a guaranty, the peremptory instruction for plaintiff was proper. Strauss v. Chewing Gum Co., 134 Mo. App. 110; Gregory v. McCormick, 120 Mo. 657; Malloy v. Sweazea, 123 Mo. App. 179. (8) Where at the close of the case both parties ask for a peremptory instruction in their favor without more and the court gives one of said instructions and directs a verdict, each party waives the question of whether or not there was any issue of fact which should have been submitted to the jury and makes the instruction of the court a conclusive finding on every question of fact at issue in the case, and is limited in the appellate court to the sole question of whether there was substantial evidence in the record upon which to support the verdict as directed. Melton v. Bank & Trust Co., 190 Fed. 128; Benttell v. Magone, 157 W. S. 154; United States v. Bishop, 125 Fed. 181; Crescent Mfg. Co. v. Patterson Mfg. Co., 195 Fed. 382.

ALLEN, J.—This is an action upon two negotiable promissory notes, each for the sum of $1000, both executed by the defendant on September 26, 1908, payable to the Stover Motor Car Company, and each bearing interest from its date at the rate of six per cent per annum. One note was due and payable on or before June 6, 1909, and the other on or before September 26, 1909. Both parties to the record are corporations. Plaintiff, suing as indorsee and holder of the

notes, recovered thereon, and defendant prosecutes the appeal.

The petition, which is in the usual form, is in two counts, one upon each of the above mentioned notes. The answer admits the corporate existence of both plaintiff and defendant, the execution of the notes, and the delivery thereof to the payee therein named, but denies generally the other allegations of the petition. And further answering defendant avers that if the payee of the notes assigned same to plaintiff for value, nevertheless there existed prior to such assignment certain equities in favor of defendant and against the payee of the notes; that the notes, together with $2000 in cash were delivered to said payee in consideration of a certain motor car called motor car No. 2, at the time sold and delivered to defendant by the payee in said note, with a "guaranty" from said payee to the defendant to the effect that the payee guaranteed to replace and renew any part or parts of such car that might prove to be defective during the first year of service thereof. It is averred that during the first year of service of the car there was a total failure of consideration for the notes, because of a breach of the covenant of "guaranty" alleged to have been executed to defendant by the payee therein; that various parts of the car proved to be defective during the first year of its use; defendant alleging with great particularity various parts of the mechanism thereof which it says proved, within one year, to be defective in the various respects mentioned. Notice to the payee of all these defects is alleged; and it is averred that the payee, the vendor of the car, failed and refused to perform and carry out its covenant of "guaranty."

It is further alleged in the answer that, at the time of the assignment of each of the notes to plaintiff, plaintiff had full knowledge of the equities existing in favor of defendant, and of all the facts averred in the answer; and that plaintiff received and accepted

the notes, and prosecutes the suit thereon, in bad faith for the purpose of aiding the payee to collect the same.

The reply is a general denial of the new matter set up in the answer.

To sustain the issues on its part, the plaintiff offered the notes in evidence, and rested. The defendant then offered a great deal of testimony, much of it by way of depositions, and numerous exhibits, in support of the allegations of its answer. Much of the testimony and many of the exhibits were excluded by the trial court, upon the objections of plaintiff's counsel. Defendant's evidence was directed to an effort to show that the motor car, for which these notes had been given in part payment, was sold to defendant by the Motor Car Company, the payee in the notes, under the "guaranty" alleged in its answer; that the latter had not been kept and performed, and that plaintiff bank had notice of the "guaranty" and defendant's equities in the premises at the time that it took the notes. The written contract by which motor car No. 2 was sold to defendant, of date September 9, 1908, was admitted in evidence. It is quite lengthy, and it is unnecessary to say more in respect to it than that the only clause contained in it which appellant's counsel seeks to show was intended to incorporate therein a "guaranty," is the following:

"The said vendor hereby agrees to sell to said vendee, and the vendee hereby agrees to purchase from said vendor, a twenty-passenger gasoline motor car, *to be built in accordance with specifications heretofore agreed upon,* subject to inspection and approval of said vendee." (Italics are ours.)

The evidence disclosed that earlier in the same year the defendant had purchased of the Stover Motor Car Company a car known as motor car No. 1. The written contract itself, under which car No. 1 was purchased, which was of date June 22, 1908, contained no contract of guaranty with respect to the car. The in-

strument however referred to a letter of the vendor, by a clause therein as follows: "The said vendor hereby agrees to sell to said vendee, and the vendee hereby agrees to purchase from said vendor, a twenty-passenger gasoline motor car, *as specified in letter of said vendor, dated February* 3, 1908, subject to inspection and approval by said vendee." (Italics ours.)

This letter, of February 3, 1908, from the Stover Motor Car Company to the manager of defendant railway company, concerning motor car No. 1, was admitted in evidence. It constituted a proposal to furnish a motor car in accordance with plans and specifications thereto attached; and contained the following "guaranty" of the vendor, viz.: "We hereby give you a guarantee that will cover renewal of any part of the mechanism on car which may prove to be defective during the first year that the car is in service." The specifications accompanying the letter described in detail the construction of the car, referring to the various parts of the mechanism thereof, such as motor, lubrication, ignition, transmission, frame, wheels, axles, etc. The letter calls attention to certain particulars of the attached specifications, contains the provision above quoted and various other terms under which the vendor offered to sell the car.

It appeared that the Stover Motor Car Company, the payee of the notes, did its banking business at plaintiff bank; that D. C. Stover, president of the Stover Motor Car Company, was, prior to his death on January 17, 1908, a stockholder in the bank. H. H. Antrim, who was called as a witness by defendant, was cashier of the bank; and after Mr. Stover's death, Antrim, J. F. Smith and J. H. Stearns, being the executors under the will of D. C. Stover, became directors of the Stover Motor Car Company, representing the Stover estate. Smith was a stockholder and director in plaintiff bank, and Stearns and his law partner were attorneys for both the bank and the Motor Car

Company. Much of the testimony offered in an effort to show fraud on the part of plaintiff, by taking the notes and suing on them, was excluded on objections by plaintiff's counsel.

It seems that the notes sued on were acquired by the bank in the course of its banking business, about the middle of October, 1908, and were taken as collateral security for the payment of an overdraft of the Motor Car Company's account, as well as security for any future indebtedness of the latter to the bank. It appears that the overdraft of the Motor Car Company at that time exceeded in amount the face of the notes and interest due thereon. The written contract of September 9, 1908, under which motor car No. 2 was sold, was delivered to the bank together with the notes.

On December 5, 1908, the Stover Motor Car Company's account showed an overdraft of $4130.51. This overdraft was, on this date, wiped out by the bank taking the note of the Motor Car Company for $5000, with the notes here sued on as collateral. The record shows that this $5000 note was paid by the Motor Car Company on March 11, 1909; that on the latter date the Motor Car Company's account showed an overdraft on the bank's books of $2775.16. Upon the payment of the $5000 note, the notes sued on were held as collateral security for the payment of this overdraft; and on March 13, 1909, the Motor Car Company gave its note for $2500, reducing its overdraft by that amount, and the notes sued on were held as collateral for the payment of this note, which was due and unpaid at the institution of the suit.

A letter of defendant to Antrim, cashier of plaintiff bank, of date January 14, 1909, was offered by plaintiff. It pertained, not to the notes in question, or to the car for which they were given, but to a note given in part payment for car No. 1, and referred to a "guaranty" on car No. 1. Likewise a letter of defendant to plaintiff, of date February 13, 1909, referring

to the note given for car No. 1, was offered by plaintiff. It stated that "the cars for which these notes were given have not been giving satisfactory service such as guaranteed by the Stover Motor Car Company." These letters were offered to show notice to the bank of a "guaranty" on car No. 2, but were excluded by the court as not pertaining to the notes sued on, or the car in the purchase of which they were given.

A letter of the Stover Motor Car Company to defendant, of date October 31, 1908, was admitted. It pertained to a third car which the Motor Car Company offered to sell to defendant; and in it the Motor Car Company said to defendant: "We will give you the same guarantee on this car as applies to the others we have sold you." Certain letters passing between defendant and the Stover Motor Car Company were excluded as being immaterial and not binding on plaintiff; as were other such letters written prior to September 9, 1908, pertaining to the purchase of car No. 2, as being merged in the subsequent written contract under which the latter car was sold.

Antrim, cashier of plaintiff bank, and who conducted its business with respect to taking these notes, testified that he did not know that the Stover Motor Car Company had the notes sued on until shortly before they were turned over to the bank; that at that time he asked the Motor Car Company for collateral to secure the latter's indebtedness to the bank on account of overdrafts, and was told that the company had these notes and that they would be sent to the bank, which was done shortly thereafter. He testified positively that, at the time the notes were delivered to the bank, he had no knowledge whatsoever of the existence of any "guaranty" as to the car for which the notes were given, nor of any outstanding equities in favor of plaintiff. He testified that upon receiving defendant's letter of January 13, 1909, above mentioned, he took it to Mr. Mowbray, manager of the Stover Mo-

tor Car Company, and asked him about it; that the latter showed him a copy of the letter of February 3, 1908, above mentioned, referring to car No. 1; that this was the first intimation that he received that either car was guaranteed, and that it was never suggested to him that there was any "guaranty" as to car No. 2.

It was sought to show 'by a great deal of testimony that car No. 2 proved defective in numerous respects during the first year of service, but on failure to prove notice to plaintiff that the motor Car Company had guaranteed this car, if in fact it had, the court excluded all testimony as to deficiencies in the car. It is unnecessary to refer to the other testimony and exhibits offered.

At the close of all the evidence, the defendant requested the court to give a peremptory instruction to find for defendant, which was refused by the court. Thereupon the plaintiff requested the court to give the jury a peremptory instruction to find for plaintiff. This instruction the court gave, and pursuant thereto the jury returned a verdict for plaintiff in the sum of $2312.33, being the amount of the two notes with interest; and judgment was rendered accordingly.

I.  The defense to the notes is based upon the existence of what is called a guaranty, asserted to have been given defendant by the payee as vendor of the motor car in question, i. e., motor car No. 2. It is evident that the word "guaranty," as used in the pleadings and evidence in the case, is to be taken not in the legal meaning of that term, but in the sense in which the word is often used colloquially, as a species of warranty, and in this sense it is to be understood when used by us. In other words the defense rests upon the alleged existence of a contract on the part of the payee, the vendor of the car, whereby the latter was warranted for the period of one year, to the extent

that the vendor would replace any parts thereof that proved, within the time, to be defective. And the chain of proof sought to be made by defendant, following the allegations of its answer was, (1) that such contract of "guaranty" existed; (2) that the car proved defective within one year, and the vendor breached its contract to replace defective parts; (3) and that plaintiff had knowledge of the existence of such contract and of defendant's equities thereunder, at the time it acquired the notes.

Underlying the whole defense is the existence of such a contract on the part of the payee as is termed a "guaranty" of the car. No such provision appears in the written instrument, of September 9, 1908, under which motor car No. 2 was sold. It is insisted, however, by appellant that one expression in this instrument had reference to, and brought into this contract, the same "guaranty" as contained in the letter of the vendor, of date February 3, 1908, written to defendant with respect to motor car No. 1. This expression is the italicized portion of the clause quoted above from the written contract under which the motor car No. 2 was sold, i. e., that the latter was *"to be built in accordance with specifications"* theretofore agreed upon.

The argument advanced by appellant is that, in this contract for car No. 2, the term "specifications" mentioned as having been theretofore agreed upon, refers, in a general way, to all the terms and conditions under which car No. 1 was sold. In selling the latter car to defendant, as we have seen, the Motor Car Company made the offer by its letter of February 3, 1908, which was accompanied by a separate list of *specifications,* designating the details of the construction of the car. This offer was accepted by defendant, by signing a written acceptance upon the letter itself; and the contract of June 22, 1908, was executed, re-

ferring to the letter. Appellant's contention is that the term "specifications," as used in that clause of the contract for motor car No. 2 quoted above, is broad enough to include all of the terms and conditions *specified* in the letter of February 3, 1908, one of which was the "guaranty" covering car No. 1.

Doubtless the word may be aptly used, under appropriate circumstances, with reference to the terms of a contract. However, we are to take it in the sense in which it was evidently intended to be used, having regard to the immediate context of the instrument in which it appears, and in the light of the surrounding circumstances. As the term is employed, it is very readily seen that it was not intended by it to call into this contract on car No. 2 the terms and conditions under which car No. 1 was sold. In fact the written contract respecting car No. 2 appears to be complete in itself, *in so far as concerns the terms and conditions under which the car was sold.* And the word "specifications" appears to have no reference to the terms and conditions under which the car was to be *sold,* but to a designation of particulars as to the manner in which it was to be *built.* Such is a common and well known use of the term specifications. That it refers purely to the separate list of particulars respecting the construction of car No. 1, which was designated "specifications," there can be no doubt.

Hence it does not appear that the written contract, under which motor car No. 2 was sold, either directly or indirectly provided anything to the effect that this car was guaranteed, as contended by appellant. The interpretation of the contract by the vendor and vendee, as shown by their subsequent correspondence concerning it, or their acts under it, is here beside the case. If indeed such evidence as appears, touching this question, could be said to affect the construction of the contract as between the parties to it, notice thereof

was not brought home to plaintiff and such construction thereof is not binding upon it.

II. But it is insisted by appellant that the plaintiff in taking the notes did not become a holder thereof in due course; although deemed, prima facie, to be such holder. [Rev. Stat., 1909, sec. 10029.] Our Negotiable Instrument Law provides:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." (Rev. Stat. 1909, sec. 10022.)

Each note was complete and regular upon its face, and plaintiff became the holder thereof before maturity. Under our Negotiable Instrument Law, an existing antecedent debt affords sufficient consideration to make one accepting a negotiable instrument, before maturity, as collateral security for such pre-existing debt, a holder for value. [Rev. Stat., secs. 9996 and 9998; National Bank of Commerce v. Morris, 156 Mo. App. 43, 135 S. W. 1008.] The contrary doctrine which formally obtained in this State (see Loewen v. Forsee, 137 Mo. 29, 38 S. W. 712; Johnson v. Grayson, 230 Mo. 380, 130 S. W. 673) has been abrogated by the enactment of the Negotiable Instrument Act. Therefore, in the instant case, plaintiff in taking the note as a collateral security for a pre-existing debt became a holder thereof for value. Section 9998, supra, provides that where the holder has a lien on an instrument, he is deemed a holder for value to the extent of his lien. Here, as we have said, the pre-existing debt for which the notes were taken as collateral security was in ex-

cess of the face of the notes and accrued interest thereon, and the notes continued to be held as collateral for an indebtedness exceeding the amount due upon them. So that plaintiff must be regarded as a holder for value to the extent of the entire amount due and payable on the notes.

It is insisted, however, by appellant that plaintiff took the notes with knowledge of the infirmities therein, and of the equities existing in favor of defendant, growing out of the alleged "guaranty" upon the car for which the notes were given; and that plaintiff acted in bad faith in the premises in receiving the notes and suing upon them. Upon this question, it is pertinent to refer to section 10026, Revised Statutes 1909, providing as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

A mere suspicion of such infirmity or defect, or knowledge of facts which would ordinarily put one on inquiry, is not sufficient; it must appear that the holder had actual knowledge thereof. [Reeves v. Letts, 143 Mo. App. 196, 128 S. W. 246; and authorities cited.]

Upon the question of notice of the alleged infirmity in the notes sued upon, the record is barren of anything on the subject except the letters above referred to of January 14, 1909, and February 13, 1909, and such notice as was given plaintiff by the contract of September 9, 1908. These above mentioned letters, however, were written months after plaintiff had received the paper, and did not refer to the notes here in controversy. In fact the only notice which plaintiff bank was shown to have had respecting the sale of car No. 2, for which these notes were given, was such as might be given it by the express terms of the writ-

ten contract itself under which the car was sold. This contract, as we have said, accompanied the notes and was delivered to the bank with them. The bank was chargeable with any infirmity in the notes, or any equities existing in favor of defendant, growing out of this contract. It is not contended that there existed any infirmity, or any equities in favor of defendant, arising in any way other than out of an alleged covenant of "guaranty;" and, as we have said, this contract, which the bank took with the notes, contained neither directly nor indirectly any such provision. So that if in any way whatsoever such covenant can be said to have existed as to car No. 2, there is not the slightest evidence that plaintiff had any knowledge of it.

It was sought to show that plaintiff bank obtained knowledge with respect to the alleged existence of such a covenant of "guaranty" on car No. 2, through the business associations of its cashier and another of its directors with those interested in and managing the affairs of the Stover Motor Car Company, the payee in the notes; and through such evidence the alleged bad faith of plaintiff in the premises was sought to be shown. As to this, it is sufficient to say that the evidence adduced had no tendency to show either such knowledge on the part of the bank, or even a suspicion of bad faith in the premises. It was not shown that any such knowledge was thus acquired by any one connected with the bank; and the cashier who handled the transaction for the bank, and whose testimony was adduced by defendant, testified positively that he had not learned anything respecting the notes beyond that disclosed by the contract which accompanied them. And the mere fact that the cashier and one director of the bank became directors of the Motor Car Company, as representing an estate of which they were executors, and that the third executor happened to be one of the

attorneys for both corporations, had no tendency to prove bad faith on the part of the plaintiff.

Other questions raised and discussed are wholly immaterial. We have carefully examined the record touching the rulings of the trial court in excluding evidence offered by defendant and find no error in the record in this respect. There being, as we view it, no evidence to go to the jury in support of the defenses asserted by defendant, the court properly directed a verdict for plaintiff. As we have said, the record shows no notice to plaintiff of any "guaranty" on the car in question, unless the written contract of September 9, 1908, can be said to include one.

It was for the court, and not the jury, to interpret this contract, and we think that the court placed the correct interpretation upon the portion thereof in question. There was therefore, in our opinion, nothing to require the submission of the case to the jury.

For the reasons given above, the judgment of the circuit court should be affirmed. It is so ordered.

*Reynolds, P. J.,* and *Nortoni, J.,* concur.