THE FARMERS STATE BANK, RESPONDENT, v. G. L. MILLER, APPELLANT.*

Kansas City Court of Appeals.    December 5, 1927.

*Corpus Juris Cyc References: Appeal and Error, 4CJ, section 2816, p. 834, n. 63; Banks and Banking, 7CJ, section 467, p. 722, n. 27; Bills and Notes, 8CJ, section 703, p. 488, n. 21; section 718, p. 510, n. 80; section 1376, p. 1061, n. 61; Evidence, 22CJ, section 1669, p. 1255, n. 53; New Trial, 46CJ, section 234, p. 267, n. 20; Pledges, 31Cyc, p. 863, n. 4; Trial, 38Cyc, p. 1632, n. 10.

*James H. Hull* and *Harding, Murphy & Tucker* for appellant.

*Terrence Riley* for respondent.

FRANK, C.—This is a suit upon a promissory note. The verdict in the trial court was for defendant. On motion of plaintiff, a new trial was granted and defendant appealed.

The note reads as follows:

"$1500.00                               Kansas City, Missouri, May 23, 1921.

"One year after date I promise to pay to the order of Robert Mitchell Co. Exactly Fifteen Hundred Dollars........Dollars. For value received with interest from date at the rate of 8 per cent per annum. Interest payable.

"G. L. MILLER."

The following indorsement appears on the back of the note.

"Robert S. Mitchell Co., by Paul L. Mitchell."

The petition, after alleging the corporate existence of plaintiff bank and the execution of the note, pleads that before the maturity of said note the payee, Robert S. Mitchell Company, endorsed the same in writing across the back thereof, and delivered it to plaintiff for value, whereby plaintiff became the owner of said note. The answer admits the incorporation of plaintiff bank and the execution of the note, then denies generally all other allegations in the petition. The answer also pleads the following affirmative defenses: (1) that the note sued on was given to the payee for fifteen shares of preferred and fifteen shares of common stock in E. J. Hunter Company, a corporation and that the consideration of said note failed for the reason that defendant never received the stock or which said note was executed; (2) that there was an agreement between defendant and E.

J. Hunter Company (through Paul Mitchell, its authorized representative) by virtue of the non-performance of which, on E. J. Hunter Company's part, the note is void; (3) that plaintiff never purchased said note or gave anything of value therefor, but obtained possession of same with full knowledge of said agreement between defendant and said E. J. Hunter Company and with full knowledge that no consideration passed to defendant for the execution of said note at the time or since the execution thereof; (4) that said stock was worthless and defendant relying on the false and fraudulent representations of said Paul Mitchell was induced to and did execute said note.

Defendant Miller's testimony is to the effect that on May 23, 1921, one Paul Mitchell approached him and represented that he, Mitchell, was the agent of E. J. Hunter Company, a corporation; that he represented to defendant that said corporation owned rich and valuable gold mines and solicited defendant to purchase stock in said corporation; that relying upon the representation made by said Mitchell, defendant purchased fifteen shares of common and fifteen shares of preferred stock in said corporation and executed the note in suit in payment of the purchase price of said stock; that prior to and contemporaneous with the execution of said note it was orally agreed between the defendant and E. J. Hunter Company, through its agent, Mitchell, that within six months from the date of said note said E. J. Hunter Company would pay defendant $1500 for the fifteen shares of common stock and that defendant was to use said $1500 so received to pay off and discharge the note in suit and that neither said E. J. Hunter Company nor the Robert Mitchell Company, payee in said note, would ever demand payment of any other or further sum from defendant but would deliver to defendant the note in suit marked paid in full and satisfied; that after the execution and delivery of the note Mitchell told defendant that he would mail to him the certificates representing the shares of stock for which said note was given; that defendant never received said stock or any other consideration for said note.

Before the organization of plaintiff bank the Platte County State Bank, a banking corporation was conducting a banking business in Ferrelview, Platte county, Missouri. On July 5, 1921, Paul S. Mitchell executed his promissory note in the sum of $1500 payable to the Platte County State Bank. Some time after Mitchell acquired the note in suit from defendant, he pledged it to Platte County State Bank as collateral to secure the payment of the $1500 note that he, Mitchell, had executed to said bank on July 5, 1921. At the time of this pledge, there was $500 due on the $1500 Mitchell note.

In October, 1921, the Platte County State Bank was indebted in the sum of $35,000 for money borrowed from other banks, which it was

unable to pay. Notes to the amount of $35,000 were taken out of the bank and delivered to the directors and they in turn placed the sum of $35,000 in cash to the credit of the bank which was used to pay said indebtedness. The Mitchell note was among the notes delivered to the directors. On October 22, 1921, the plaintiff bank was organized and took over all the assets of the Platte County State Bank and assumed the payment of its deposits. This transfer was approved by the Commissioner of Finance. The directors of the old bank executed to plaintiff bank a bond in the sum of $32,000 to guarantee it against loss by reason of the assumptions of said deposits and by separate written assignment pledged the notes, amounting to $35,000 which had been theretofore taken out of the old bank, as collateral to guarantee the payment of said bond. Defendant testified that before plaintiff acquired the note in suit, he notified the directors of the old bank, who also became directors of plaintiff bank, not to buy the note; that he never received any consideration for it; that it was procured by false and fraudulent representations and that he did not intend to pay it. The directors denied receiving such notice from defendant and each testified that they had no talk with defendant about the note until after the old bank acquired it and after it had been assigned to the plaintiff.

Appellant contends that respondent accepted the note as collateral security for a pre-existing debt and for this reason was not a holder for value. This contention involved the construction of sections 812 and 838 of the Negotiable Instrument Law, Revised Statutes 1919. Said sections read as follows:

"Sec. 812: Valued is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such, whether the instrument is payable or demand or at a future time.

"Sec. 838: A holder in due course is a holder who has taken the instrument under the following conditions: (1) that it is complete and regular upon its face; (2) that he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating."

Plaintiff's evidence tends to show that the note in suit was complete and regular upon its face and was transferred to the Platte County State Bank by Paul Mitchell, before maturity and without notice to said bank of any infirmity therein or defect in the title of said Mitchell. Later, the directors of said Platte County State Bank acquired title to said note in the manner heretofore stated and before

maturity of said note, assigned and transferred it to plaintiff as collateral security to a $32,000 bond which the directors of the Platte County State Bank had theretofore executed to plaintiff for the purposes heretofore stated. At the time the note was transferred to plaintiff, it had no notice of any infirmities in said note or of any defect in the title of the directors of the old bank, who transferred the note to plaintiff. The evidence of plaintiff and defendant relative to the facts attending plaintiff's acquisition of the note being conflicting, the question of whether or not plaintiff acquired the note before maturity, without notice of any infirmity therein or defect in the title of the persons negotiating same, was one of the facts to be determined by the jury.

It is conceded by both parties that plaintiff holds the note as collateral security for a pre-existing debt. The weight of authority is that such holding constitutes plaintiff a holder for value. In Bank v. Railroad, 172 Mo. App. 662, 675, the court said:—

"Each note was complete and regular upon its face, and plaintiff became the holder thereof before maturity. Under our Negotiable Instrument Law, an existing antecedent debt affords sufficient consideration to make one accepting a negotiable instrument, before maturity, as collateral security for such pre-existing debt, a holder for value. [Rev. Stat., sections 9996 and 9998; National Bank of Commerce v. Morris, 156 Mo. App. 43, 135 S. W. 1008.] The contrary doctrine which formally obtained in this State (see Loewen v. Forsee, 137 Mo. 29, 38 S. W. 712; Johnson v. Grayson, 230 Mo. 380, 130 S. W. 673) has been abrogated by the enactment of the Negotiable Instrument Act. Therefore, in the instant case, plaintiff in taking the note as a collateral security for a pre-existing debt became a holder thereof for value."

To the same effect: Bank v. Morris, 156 Mo. App. 43, 135 S. W. 1008; Bank of Columbia v. Lyda, 191 S. W. 245; Thomas v. Goodrum, 231 S. W. 571; 8 C. J., page 488, sec. 703. We have examined the cases cited by appellant from both the Supreme and appellate courts of this State, announcing a contrary doctrine and find that in each of the cases cited, except Wright v. Trust Co., 144 Mo. App. 648, the court was dealing with a note that had been transferred prior to the enactment of the Negotiable Instrument Law although some of the cases were decided after the enactment of said law. [Loewen v. Forsee, 137 Mo. 29, 38 S. W. 712; Johnson v. Grayson, 230 Mo. 380, 130 S. W. 673; Goodman v. Simonds, 19 Mo. 107; Wright v. Trust Co., 144 Mo. App. 648; Board of Trustees v. Fry and Wood, 192 Mo. l. c. 563.] The doctrine announced in these cases has been abrogated by the enactment of the Negotiable Instrument Law. [Bank v. Railroad, supra.]

The facts before the court in Wright v. Trust Co., supra, were that a warehouse receipt for a carload of wheat was delivered to defendant as security for a pre-existing debt. The receipt was delivered to defendant on January 18, 1906, which was after the passage of the Negotiable Instrument Law. On this state of facts, the Springfield Court of Appeals held that defendant was not a bona-fide holder for value, of the warehouse receipt, because it took the warehouse receipt as security for a pre-existing debt. Evidently the provisions of the Negotiable Instrument Law escaped the attention of the court in that case, because in the subsequent case of Aab v. French, 279 S. W. 435, and Republic State Bank v. McDaniel, 290 S. W. 449, the same court announced a contrary doctrine. These cases in effect overrule Wright v. Trust Co., supra. Appellant also cites Kincaid v. Estes, 218 Mo. App. 1. c. 117, in support of his contention on this point. The language of the court in that case, upon which appellant here relies, was clearly *obiter* because not necessary to a decision of the point there considered. This clearly appears from the following quotation from that case:—

"There is a rule in this State that a transferee of a note held by him merely as collateral security for a pre-existing debt is not a holder for value in the usual course of business. [Wright v. Trust Co., 144 Mo. App. 640, 648; Loewen v. Forsee, 137 Mo. 29, 41.] But this testimony of defendant relied upon by him shows that plaintiff told him that he held the note as collateral security for a loan made at the time the note was given him. 'Where a note is taken as collateral security for a debt at that time created and on the faith thereof, . . . the consideration is sufficient and the indorsee a purchaser for value in due course of business.' "

It is next contended by appellant that the attempted transfer of the assets from the old bank to the new was without authority and void because violative of section 11701, Revised Statutes 1919, and to use the language of appellant, "the taint which attaches to the attempted conveyance from the old bank to the new also attaches to the efforts of the directors of the old bank to convey the Mitchell note to the new bank."

Section 11701, Revised Statutes 1919, makes it unlawful for a bank to make a voluntary general assignment of its affairs and business and also provides that when a bank finds itself to be in a failing condition, it shall immediately place itself in the hands of the bank commissioner. The Supreme Court in Trust Company v. Tindle, 272 Mo. 1. c. 694, held that this statute is indicative of a legislative purpose to prohibit insolvent banks from liquidating their business under the general law. The record in this case shows that doubtful notes in the amount of $35,000 were taken out of the old bank and replaced with the same amount in cash and the assets of the old

bank transferred to the new bank with all deposits guaranteed. All this was done with the knowledge, consent and approval of the bank commissioner. This was not an attempt on the part of the old bank to liquidate its affairs under the general law in violation of the statute but on the contrary it was all done with the consent and approval of the bank commissioner and was in substantial compliance with the statute.

In addition to this, appellant admits in brief that the Mitchell note was not included in the transfer of the assets of the old bank to the new bank but was held personally by the directors of the old bank who assigned and delivered it to the respondent bank as collateral security for a bond which had been theretofore given to respondent by the directors of the old bank. If as admitted by appellant, the Mitchell note was not included in the transfer of the assets from the old bank to the new bank, but was held personally by the directors of the old bank, it is difficult to understand, how the transfer of such assets could, in any manner, effect the transfer of the Mitchell note thereafter made by the holders of such note. This contention is ruled against appellant.

Appellant next contends that as respondent, in effect holds the note in suit as collateral security to guarantee the payment of whatever amount may become due it on the $32,000 bond given by the directors of the old bank, no recovery can be had in this case for the reason that nothing was shown to be due on the bond. It is true that respondent is only entitled to receive from the collateral, the amount due on the bond but this does not mean that respondent must wait until the amount due on the bond is definitely determined before collecting the collateral. In Aab v. French, 279 S. W. 435, 437, the court said:

"The bank in this case was a holder in due course, *and had the right to collect the collateral note when due*, and for that purpose to sue in its own name and in its own right." (Italics ours.)

If a note pledged as collateral security, is supported by a valuable and legal consideration and is collected when due, but before the basic debt is due, it is no concern of the maker because he owes the entire note and the overplus, if any, after the basic debt is paid, would go to the payee of the note. [Johnson v. Grayson, 230 Mo. 403.] If, however, the pledged note was without consideration, but was pledged before maturity without notice to the pledgee of infirmities therein or defect of title of the pledgor, the pledgee would only be entitled to recover the amount due on the basic debt, but if suit be brought on the collateral note when due, but before the basic debt is due, the pledgee would be entitled to recover the full amount due on the collateral note and after paying the amount due on the basic

debt, would hold the surplus amount collected as trustee for the maker of the pledged note. In Aab v. French, supra, we find this language,

"While held as collateral by the bank, an original payee in the note cannot maintain a suit upon it in his own right. The relation of trustee and *cestui que trust* between the bank and Stonebraker would not arise unless the amount collected by the bank upon the collateral note should exceed the amount due from Stonebraker to the bank upon his note. In that case the bank would hold the surplus amount collected as trustee. . . ."

The court *nisi* granted a new trial on the grounds, (1) that the verdict was against the weight of the evidence; (2) because of newly-discovered evidence; and (3) because of the error of the court in giving defendant's instruction number 2.

The rule regarding the trial court's power to grant a new trial on the ground that the verdict is against the weight of the evidence is well stated by the Court en Banc, in Lyons v. Corder, 253 Mo. l. c. 561, in the following language:

"The law is well settled in this State, that where a trial judge exercises his discretionary power of setting aside a judgment on the ground 'that it is against the weight of the evidence,' his action in so doing will not be reviewed except upon a showing that no verdict in favor of the party to whom the new trial is granted would be allowed to stand."

What we have heretofore said is indicative of our opinion that had the verdict been for plaintiff, the trial court would not have been authorized to say, that in no event, should such verdict be allowed to stand.

The affidavit of David Hope was filed in support of the motion for new trial on the ground of newly-discovered evidence. This affidavit recites, in substance the following:

"David Hope upon his oath states that he is a resident of Platte County, Missouri; that on the 26th day of April, 1925, appellant G. L. Miller was at his home and at that time had with him 1500 shares of common stock and 1500 shares of preferred stock in the E. J. Hunter Company; that he showed such shares to affiant at that time and inquired if the stock was of much value; that he stated that he received the stock for a note given to Robert Mitchell Company, which was the note sued on in the case which G. L. Miller was defendant; that the shares of stock were received in payment of the note given to Robert Mitchell Company. The affidavit further states that E. J. Hunter Company is now the owner of certain gold mines in Mexico and said mines are now being worked by said company; that said E. J. Hunter Company owned the mines at the time the stock was issued to said G. L. Miller. The affidavit further recites that none of these facts were known to the Farmers State Bank or any of its offi-

cers or directors or agents until after the trial of the case of Farmers State Bank against G. L. Miller; that said facts were first communicated to the attorney for said Farmers State Bank after the trial of said case; that affiant was a witness for the defendant and defendant knew that affiant knew these facts and defendant did not call affiant as a witness at said trial; that no one knew of these facts until after said trial when same was communicated to the attorney for Farmers State Bank.''

The consideration for the note in suit was common and preferred stock in the E. J. Hunter Company, a corporation. One alleged defense is that such consideration failed because appellant never received the stock for which the note was given and that such stock was worthless. The alleged newly-discovered evidence tends to show the appellant did receive the stock for which the note was given, also that it was of some value if said company owned and was operating gold mines. We think this evidence was material and authorized the granting of a new trial. Instruction number 2, given at the request of defendant, is as follows:

''The court instructs the jury that although the jury may believe from the evidence that on or about the 23rd day of May, 1921, the defendant executed his promissory note payable to the order of Robert Mitchell Company and that thereafter the said Robert Mitchell Company indorsed the same in writing across the back thereof and delivered the same to plaintiff, yet if you further believe from the evidence that said note was given in payment for fifteen shares of preferred stock in the E. J. Hunter Company, valued at $100 per share and also for $1500 worth of common stock in the said E. J. Hunter Company and if you further believe from the evidence that as a part of the sale and purchase of said stock, it was agreed by and between the defendant and said E. J. Hunter Company, by and with its agent Paul Mitchell, if you find that said Paul Mitchell was then the agent of the said E. J. Hunter Company, that it was a part of the agreement for the sale and purchase of said stock, that within six months from the date of the giving of said note, that the said E. J. Hunter Company would take up and pay the defendant for his common stock the full sum of $1500 in payment of the common stock and that said sum of $1500 could then be used by defendant to pay off and discharge his note of $1500 given in payment of the preferred stock and that the E. J. Hunter Company or the Robert Mitchell Company would never demand payment of any other or further sums than the fifteen hundred dollar-payment which the defendant would receive from the said E. J. Hunter Company for defendant's common stock and that it would then deliver up to defendant his note in full satisfaction of all sums due from defendant, and if you

further believe from the evidence that at the time plaintiff procured said.note its officers, agents or directors had actual knowledge of said agreement between defendant and the said E. J. Hunter Company, then your verdict must be for the defendant. (Given.)''

The evidence tended to establish the parol agreement between appellant and E. J. Hunter Company as recited in said instruction, but such agreement, being oral, is no defense in this case. Parol agreements made prior to or contemporaneous with the execution of a note, which tend to contradict or vary·the terms of the note, cannot be set up as a defense to a suit on the note. [Peoples Bank of Ava v. Rankin, 282 S. W. 91, 94, and cases cited; Farmers State Bank v. Sloop, 200 S. W. 304, 305, and cases cited.]

If the agreement recited in said instruction had been a valid written agreement, the instruction would still be erroneous because it purports to cover the whole case and directs a verdict for defendant without requiring the jury to find that plaintiff had knowledge at the. time it acquired the note, that such agreement had been breached.

Knowledge on the part of respondent that a part of the consideration for the note in suit, was an executory agreement of the payee, which has not been performed, will not deprive respondent of the character of a bona-fide holder, unless he also has knowledge that such executory agreement has been breached. [Leoy v. Artophone Co., 249 S. W. 158, 160.]

We have concluded that the action of the trial court in granting a new trial should not be disturbed and therefore affirm the judgment. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.