EDWARD C. HILL, Respondent, v. T. J. DILLON, et al., Appellants.

Springfield Court of Appeals, November 10, 1910.

1. **BILLS AND NOTES: Fraud: Misrepresentations: Sufficiency of Evidence.** In a suit on a note, the defense was that the note had been given as part of the purchase price of mining stock, which defendants had been induced to buy through the fraud of the owners in the sale of the stock. It appeared that ore had been so placed in the mine which was shown to defendants so as to make it appear to be the face of a large body of ore producing dirt, when in fact the vein was very small; misrepresentations were made as to the size of the vein, as to the per cent of mineral, as to the capacity of the pumping machinery, etc. *Held*, that the evidence was sufficient to go to the jury on the question of the note having been procured by fraud.

2. **FRAUD: Misrepresentations: Principal and Agent: Scope of Authority.** In a suit on a note the defense was that the note had been procured by fraud, and misrepresentations in the sale of an interest in mining property to defendants. An employee of the mine owner had a financial interest in the deal, and he had also been directed by the owner to show the mine to defendants, and was acting within the scope of his authority when he made the fraudulent representations. *Held*, that for either of these reasons, defendants had a right to rely on his statements.

3. **BILLS AND NOTES: Fraud: Innocent Purchaser: Burden of Proof: Question for Jury.** Where it is established that the note sued on had been procured by fraud, the burden is cast upon plaintiff to prove that he was a purchaser in good faith, for value before maturity; and whether plaintiff had discharged that burden is a question for the jury to determine, and the trial court erred in passing on the question and preemptorily instructing for plaintiff.

4. **FRAUD: Bills and Notes: Estoppel.** The representations made by the makers of a note as to their solvency, and the giving of references on that question, does not estop them from setting up fraud in the procurement of a note, as a defense against payment, even if the note is in the hands of a person to whom they had made statements as to their solvency.

5. ———: ———: **Failure of Consideration: Remedy.** Where a note was procured from defendants through the fraudulent

representations of the owner of mining property in the sale of stock, the defendants could not defeat the note entirely if the stock they received was of any value, without tendering back the stock. If they retained the stock they could offset the amount of their damages against the amount due on the note.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

REVERSED AND REMANDED.

*George Pepperdine* and *H. H. Bloss* for appellants.

(1) After the defendants had shown fraud in the procuring of this note by the payee, and failure of consideration, the burden then shifted to the plaintiff to prove affirmatively, that he was a holder for value before maturity, without notice of such defenses and the cause should have been submitted to the jury on these issues. Jones v. Wilson, 124 S. W. 548; Stewart v. Andes, 110 Mo. App. 247; Hahn v. Bradley, 92 Mo. App. 404; Jones v. Bank, 128 S. W. 829; Section 59, Session Acts, 1905, p. 250. (2) In this case the defendants proved the covering up of the stope in this mine with ore bearing ground, making the stope thus inaccessible to the buyers, and then the fraudulent representation that this stope was showing the same ore bearing ground that the head of the drift showed and the proof made by them, that these statements were false, as shown by the subsequent developments after the removal of this loose ground, and, that defendants relied on these statements and had not the means of ascertaining the truth. This made a case of actionable fraud. Alston v. Loy, 172 Fed. 90; Mudsill Mining Co. v. Watrus, 61 Fed. 162; Bradford v. Wright, 123 S. W. 110; American H. Co. v. Dent, 121 Mo. App. 108; Cahn v. Reed, 18 Mo. App. 130; Brownlow v. Wallard, 61 Mo. App. 133; Dun v. White, 63 Mo. 181; Morley v. Harrah, 167 Mo. 74; Tinker v. Kier, 195 Mo. 183; Gottschalk v. Hirchner, 109 Mo. 184.

*William B. Skinner* and *Edgar P. Mann* for respondent.

(1)   Representations which amount merely to an expression of opinion and which does not imply knowledge and about which men may differ are not fraudulent, although untrue, and known to be so by the party making them, and such representations afford no relief against a contract.   Cohn v. Reed, 18 Mo. App. 115; Cornwall v. Real Estate Co., 150 Mo. 377; Harrison v. Walden, 89 Mo. App. 164; Nauman v. Oberle, 90 Mo. 666; Brown v. Mining Co., 194 Mo. 681.   (2)   False representations of an employee or agent as an inducement to contract cannot be relied upon as a defense thereto unless the representations were within the scope of the employee or agent's authority and were made with the sanction of the principal.   American Ins. Co. v. Kuhlman, 6 Mo. App. 522; Richardson v. Polum, 36 Mo. App. 88; Crawford v. Bank, 67 Mo. App. 39; Rawling v. Bean, 80 Mo. 614.   (3)   Since the decision of the case of Hamilton v. Marks, 63 Mo. 178; it has been settled law in this state that the consideration of negotiable paper in the hands of a bona fide holder, for value, before maturity, cannot be inquired into. Bad faith, alone, can open the door to such inquiry. Gross negligence even is not sufficient.   Actual notice of the facts which impeach the validity of the note must be brought home to the holder.   Jennings v. Todd, 118 Mo. 304; Mays v. Robinson, 93 Mo. 114; Borgess v. Vette, 142 Mo. 560; Leavitt v. Taylor, 163 Mo. 158; Wright Inv. Co. v. Realty Co., 178 Mo. 80.

COX, J.—Action upon a promissory note, $2500, executed by defendants to Grant Hart, and by him transferred to plaintiff.   Defendants admit the execution of the note but allege fraud in its procurement and that plaintiff was a party to the fraud.   The reply is a general denial, plea of purchase in good faith

before maturity and plea of estoppel. At the trial plaintiff introduced this note and its endorsement and rested. Defendants then offered testimony tending, as they claimed, to support the allegations of the answer, and at the close of defendants' testimony the court gave a peremptory instruction to the jury to find for plaintiff. Verdict was rendered for plaintiff and the defendants have appealed.

The only question to be determined here is the propriety of the court's action in giving a peremptory instruction for the plaintiff.

The evidence tended to show the following facts: J. B. Davis was at one time the owner of ten acres of land near Stotts City in Lawrence county, and a mining lease upon sixty acres adjoining. A shaft was sunk and drifts run from it both north and south, a distance of seventy-five to one hundred feet. A mill was erected at a cost of about fifteen thousand dollars, but the mine failed to pay and Davis finally sold out to D. B. Loy, and took a deed of trust on the entire property for $11,500 to secure the purchase price. Loy made some efforts to operate the mine and he also failed to make it pay. Then using the physical property as a basis he formed a corporation with a capital stock of $100,000, and the sale of one-half of this stock to defendants is the consideration for the note in suit.

During the time that Davis was experimenting with this mine, he and his foreman, Grant Hart, became indebted to plaintiff and the Stotts City Bank of which plaintiff was president. Hart continued in the employ of Loy as foreman after the sale to Loy and up to the time of the transaction with defendants. After the formation of the corporation Loy undertook to sell stock and with Hart and one Bosley, who was something of a mining expert, got into communication with defendants and finally induced them to go look at the mine. Loy went with them to the mine on the occasions of their visits, but did not go down into the mine with

them. The mission of showing up the mine was entrusted to Hart who had had charge of it from the time of Davis' attempt to operate it. On this inspection the north drift made no showing, but when they reached the south drift it appeared that a stope was found which consisted of a sloping bank at an angle of about forty-five degrees at the top of which appeared to be a place where ore was being blasted out; that this ore was scattered down over the stope in a way to make it appear to be the face of a large body of ore-producing dirt, and Hart represented to defendant Bushman that it was the same as that at the head of the stope where the blasting had been done and would run four per cent mineral. Some representations were also made that the pumping machinery then in the mine was ample to keep the water out. Loy and Hart together made statements as to the cost of operation and the amount of ore that could be produced each day, and its value, showing that a net profit of $3348 per week could be made. Upon the strength of these representations defendants purchased fifty thousand shares of the stock for $12,000 and paid $2500, cash, and gave the note in suit to Hart for $2500, and it was agreed the remainder, $7500 should be paid from the earnings of the mine. An attempt was made to operate the mine for a period of six months, during which time several thousands of dollars were expended and about two hundred dollars worth of ore was mined.

The facts proved to be that the pumping machinery was inadequate, and had to be repaired and enlarged; that the ore which appeared on the face of the stope and which led defendants to believe that a large body of ore-producing dirt was exposed in the mine was only ore-bearing dirt that had been scattered over the stope from a small vein of ore above and in reality the vein of ore was very small and finally pinched out entirely.

Was this evidence sufficient to entitle the defend-

ants to go to the jury on the question of the note having been procured by fraud? To our mind it was clearly sufficient. The only purpose defendants had in buying this stock was to secure an interest in a paying mine, and hence, the sole inducement to the purchase was the belief that the stope described by the witnesses was an exposed surface of ore-producing dirt, and Hart who had been the foreman in charge of the mine when this ore was scattered over this stope must have known the true condition and must have made the representation that it was four per cent ore, knowing that such representation was false. That this representation was a material one and induced the purchase of the stock is made clear by the testimony and it also further appears that defendants could not by personal examination detect its falsity, and we, therefore, have all the elements of actionable fraud.

But it is now insisted by counsel for respondent that Hart was only the employee of Loy and, therefore, any representation made by him would not be binding unless made within the scope of his authority. This is true, but the facts in this case show that Hart had a financial interest in this deal for it was agreed that the note in suit should be made payable to him and should be used to discharge his debt to plaintiff and the bank. In addition to this he was really sent by Loy to show the mine to defendants, and was, therefore, acting within the scope of his authority and for either of these reasons defendants had the right to rely upon his statements.

Why the peremptory instruction was given does not appear, but in any event we think it was error to give it. The facts which we have above outlined and which the evidence of defendants tended to prove were ample to send the case to the jury on the question of the note having been procured by fraud, and if they should find for defendants on that issue then the burden of proving that he was a purchaser in good faith

for value before maturity was upon the plaintiff. [Jobes v. Wilson, 140 Mo. App. 281, 124 S. W. 548; Stewart & Co. v. Andes, 110 Mo. App. 243, 84 S. W. 1134; Jones v. Bank, 128 S. W. 829; R. S. 1909, section 10029.]

This being true, the court could not tell the jury that plaintiff had discharged that burden, but whether he had or not was a question for the jury to determine. [Bryan v. Wear, 4 Mo. 106; Vaulx v. Campbell, 8 Mo. 224; Gregory v. Chambers, 78 Mo. 298; Wolff v. Campbell, 110 Mo. 114, 19 S. W. 622; Gordon v. Burris, 141 Mo. 602, 43 S. W. 642.]

In this case no evidence except the note was offered by plaintiff, but a verdict was directed at the close of defendants' testimony. Having found that there was sufficient testimony to take the case to the jury on the fraud question a peremptory instruction for plaintiff could only be justified upon the theory that defendants' testimony showed affirmatively that plaintiff was a bona fide purchaser for value before maturity; that is, that defendants had furnished the testimony which, under the state of the issues, it was the duty of plaintiff to furnish. We do not think this was done, and, hence, hold that the court erred in giving the peremptory instruction for plaintiff.

Respondent also insists that the evidence shows a state of facts which would estop defendants from now asserting any defense to this note, contending that the evidence shows that the plaintiff was induced to purchase the note upon the representations of defendants. We do not so interpret the testimony. While defendants understood that the note was to go to the plaintiff and to be used in discharge of the debt of Hart and Davis to the bank, yet they made no representation to plaintiff, or any other officer of the bank, as to the genuineness of the note, or any statement which would in any way preclude them from making the defense they did make in the trial of this case.

The only representations made by them refer to their own solvency and some references were given by them upon that question. We see nothing in this testimony to justify an application of the doctrine of estoppel.

Since this case is to be retried it may ·be well to call attention to one matter which does not seem to have been noticed by counsel for either party in the trial of this case. The defense in this case is that the note was procured by fraud and that there was no consideration for it. The evidence shows that the corporation owned the title in fee to ten acres of land; also owned a mill that had been erected on the property at a cost of $15,000. There was, therefore, property of some value belonging to the corporation. This property was encumbered for $11,500. If it were true that the ten acres and the mill and the machinery was worth no more than the encumbrance then it would appear that the only consideration for the note was the value of the mining lease and if defendants could show that the mine could not be operated at a profit then a total failure of consideration would be shown; but if it should appear that the ten acres and the other physical property owned in fee by the corporation was of more value than the amount of the encumbrance at the time defendants purchased the stock and gave the note then there would not be a total failure of consideration and defendants could not defeat recovery entirely without tendering back the stock which they had procured, but could only offset the amount of their damages against the amount due on the note. Of course, if plaintiff should prove that he was an innocent holder then the entire defense would fail, but that is a question for the jury. It is probably true that the value of the physical property was less than the encumbrance and so neither party took notice of it in the trial, and mention is only made of it now that in case of a retrial this should either be made to appear

or the parties should concede it and let the records so show. For the error noted the judgment will be reversed and the cause remanded. All concur.