CHARLES DOWNS, Appellant, v. J. E. HORTON et al.

Division One, April 9, 1921.

1. **NEGOTIABLE INSTRUMENTS: Fraud: Evidence.** Evidence which raises a doubt as to a note not being a safe investment because of the risk taken as to the solvency of the makers, must not be taken as equivalent to showing knowledge of fraud in the procurement of the note.

2. ——: ——: **Indorsement Without Recourse.** The fact that the indorser of a note originally tainted with fraud took it indorsed without recourse, is not a badge of guilty knowledge of the fraud on the part of the indorsee. To hold otherwise would be to impair the negotiability of commercial paper.

3. ——: **Proof of Fraud: The Jury.** Notwithstanding the jury are the judges of the credibility of testimony, yet, where in an action by an indorsee of a promissory note against the makers it is admitted that the note was originally tainted with fraud on the part of the payee from whom the indorsee obtained it, the latter may show by oral evidence that he had no notice of the fraud when he took the note, and the jury is not at liberty to disbelieve this evidence if it is uncontradicted, unimpeached and free from impeaching circumstances; and is not at liberty to find that the indorsee had actual knowledge of the infirmity, or of facts which made his taking of the note an act of bad faith within the meaning of Section 10026, Revised Statutes 1909, merely because there is a lack of what the jury deems credible evidence in support of the claim of the indorsee.

4. ——: **What is Proof of Notice.** Under the Negotiable Instrument Act (R. S. 1909, sec. 1026) the duty is devolved upon the holder of a promissory note originating in fraud to prove his good faith and lack of notice of the fraud when he took the note; but in order to constitute notice there must be a finding that he had actual notice of the fraud, or of facts which made his taking of the note an act of bad faith. It is not enough that the facts in evidence raise a suspicion of guilty knowledge, or that the facts known to him would have put an ordinarily prudent man on inquiry.

5. ——: **Statute a Codification of Former Law.** It is generally held that the Negotiable Instrument Law is a mere codification

of the general law in relation to such instruments. This is certainly true of Section 10029, Revised Statutes 1909, which casts upon the holder the burden of proof of his good faith and lack of notice of the fraud when fraud has been shown in the procurement of the note sued on.

6. ———: **Consideration.** The statute does not make want or failure of consideration unmixed with fraud one of the things proof of which will cast on the holder the burden of proving himself a holder in due course.

7. ———: **Evidence of Notice of Fraud.** It is the law under this act, and was the law before the act was passed, that knowledge of facts which would excite suspicion or put a reasonable man on inquiry, or even negligence, is not sufficient to charge a purchaser of a note with notice of fraud in its origin.

8. ———: **Evidence of Innocence.** Upon proof of fraud or illegality in the creation of a promissory note, an obligation is imposed on the holder to show that he came fairly into possession of it. Evidence that it was taken for value before maturity will not alone meet the requirement. He must show that he had no knowledge or notice of the fraud. Specifically, he must disclose the facts and circumstances under which he acquired it.

9. ———: **Evidence: The Jury.** When the indorsee of a negotiable instrument in an action on it against the makers, has shown that he purchased it for value before maturity in good faith, and has disclosed all the facts and circumstances attending the purchase, and they are all consistent with good faith and negative any notice of the fraud, and no damaging or discrediting circumstances of substantial value are shown, and defendant produces no countervailing or impeaching evidence, the jury may not, by disbelieving the plaintiff's evidence, make a finding that after all the plaintiff did have actual knowledge of the fraud, and that there were facts known to him which made his act in taking the note bad faith on his part.

10. **BURDEN OF PROOF: Meaning.** The term "burden of proof" has two distinct meanings. By the one is meant the duty of establishing the truth of a given proposition or issue by such a quantum of evidence as the law demands in the case in which the issue arises; by the other is meant the duty of producing evidence at the beginning, or at any subsequent stage of the trial, in order to make or meet a prima-facie case. Generally speaking, the burden of proof, in the sense of the duty of producing evidence sometimes called the "burden of evidence," passes from party to party as the case progresses, while the burden of proof, meaning the obligation to establish the truth of the claim by preponderance of the

evidence, rests throughout upon the party asserting the affirmative of the issue, and unless he meets that obligation upon the whole case he fails. This burden of proof never shifts during the course of the trial.

11. ———: ———: Distinction. The phrase "burden to prove" used in the Negotiable Instrument Act, means the "burden of evidence," as distinguished from the "burden of proof" in its strict sense.

12. ———: Order of Evidence: Directed Verdict. In an action on a negotiable instrument, where fraud is charged by the answer, it is incumbent on the defendant to first offer evidence of facts tending to show the fraud and nothing more. This raises a presumption which calls upon the plaintiff to disclose the facts which are peculiarly within his knowledge. The plaintiff then gives evidence of all the facts and circumstances under which he acquired the paper, and the presumption takes flight. If the plaintiff's evidence is such that his good faith and want of notice are the only inferences that a fair-minded person could draw from it, it then devolves upon the defendant to prove specific facts tending to show plaintiff's actual knowledge of the fraud or his bad faith. If defendant offers no such evidence, then clearly he has failed to offer any evidence in support of his affirmative defense that plaintiff had notice of the fraud when he took the paper, and the plaintiff is entitled to a directed verdict.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby,* Judge.

REVERSED.

*Lamar, Lamar & Lamar* for appellant.

(1) Under the law merchant, which has become a part of the common law, when the defendant makes proof which establishes prima-facie that he is a holder in due course, the burden of proof then shifts back to the defendants to show actual knowledge on the part of the defendant of facts which would destroy his right to recover, and in the absence of such proof by defendants, plaintiff is entitled to a peremptory instruction. Daniel on Negotiable Instruments (2 Ed.), sec. 819; 3 R. C. L. sec. 245, p. 1041; 8 C. J. sec. 1295, pp. 988-989; Johnson v. McMurry, 72 Mo. 282; Henry v. Sneed, 99 Mo. 422; Wright Inv. Co. v. Fidelity Co., 178 Mo. 80; Hamilton v. Marks, 63 Mo. 180. (2) The purpose of the Negotiable Instrument Law was

not to clog and hamper commercial paper, but to facilitate its transfer, and codify and make uniform the established rules of law, and this section did not change any rule as to proof, or the burden of proof, or the burden of evidence. Brannan on Negotiable Instrument Law (2 Ed.), p. 69; Selover on Negotiable Instrument Law (2 Ed.), p. 1; Ogden, Negotiable Instrument Law, pp. 253, 256; Crawford on Negotiable Instrument Law, p. 5; Bunker on Negotiable Instrument Law, pp. 1, 5; 8 C. J., sec. 1291, p. 983; German Am. Bank v. Lewis, 63 So. (Ala.) 743; Fisk Rubber Co. v. Parker, 170 Pac. 581; Sisk v. Meager, 73 Atl. 785; Campbell v. National Bank, 126 S. W. 114; Metropolitan Co. v. Folden, 180 S. W. 985; German Am. Bank v. Lewis, 66 So. 509.

*Hiett & Scott* and *Roscoe C. Patterson* for respondents.

RAGLAND, C.   This case comes to us upon certification by the Springfield Court of Appeals. The opinion written by the presiding judge of that court, in which both of his associates concurred, is as follows: "This is a suit on a promissory note given by defendants to T. P. Tuck & Company in payment of a horse. The plaintiff sues as a purchaser for value of said note and, having lost in the trial court, appeals the case here claiming to be an innocent purchaser for value.

"The horse in question was purchased by defendants who were farmers living near Mountain Grove, Missouri, for breeding purposes, each defendant purchasing one or more shares in the horse but giving a joint note. The pleadings in the case are so framed that defendants charged in their answer and plaintiff admitted by reply that this note was procured by fraud, the fraud being that the agent of Tuck & Co. gave two or three prominent farmers or stockmen without consideration an interest or share in the horse for the purpose of representing, as he did represent to defendants, that such persons were purchasers of such shares for cash, thereby inducing these defendants to believe that such prominent farmers and stockmen were

287 Mo.—27

joint purchasers of the horse with them. The nature of the fraud perpetrated and admitted will be fully seen by reference to the case of Ozark Motor Co. v. Horton, 196 S. W. 395.

"The sole issue is whether the plaintiff is a holder in due course as defined by the Negotiable Instrument Law, Section 10022, Revised Statutes 1909, in which case the defense of fraud is not available. The title of Tuck & Co. who negotiated this note to plaintiff being admitted to have been defective, the burden was cast on and assumed by plaintiff to prove that he acquired the title as holder in due course as provided by Section 10029, Revised Statutes 1909.

"The plaintiff's evidence is to this effect: The note is dated July 18, 1911, due October 1, 1915, at seven per cent interest, payable annually. Plaintiff purchased this note and another from T. P. Tuck June 26, 1912. Plaintiff was then a banker at Carl Junction, Jasper County, where he had lived many years and had previously been in the mercantile business. He became acquainted in a business way with T. P. Tuck in 1911. Tuck then and thereafter lived in Springfield, Mo., and was engaged in selling imported stallions. Tuck desired to have plaintiff or his bank handle some of his commercial paper and at that time offered to sell plaintiff a note on some parties in Arkansas. Plaintiff wrote to the Bank of Greene County at Springfield, getting the name of this bank from a bank directory, as to Tuck's financial and business standing. This bank replied that Tuck was not one of its customers and it had no 'line on him,' and referred plaintiff to the State Savings Bank of Springfield. Replying to plaintiff's inquiry the cashier of this bank said Tuck was worth from $6,000 to $10,000 and 'concerning the financial responsibility, etc., of Mr. T. P. Tuck of this city, beg to say that I have had considerable business dealings with Mr. Tuck in the last seven years, and I have always found him to be absolutely reliable and honest in all dealings I have had with him.'

"This was in August, 1911, and after further inquiry plaintiff bought the Arkansas note which was later

paid.   In January, 1912, Tuck offered to sell plaintiff
or his bank the present note.   The plaintiff then wrote
a letter of inquiry to the Frst National Bank of Mountain
Grove as to the financial responsibility, integrity, etc.,
of the makers of this note, these defendants.   This bank
replied by its cashier not unfavorably but somewhat in-
definitely.   Not being altogether satisfied plaintiff wrote
a similar inquiry to E. H. Farnsworth, an attorney at
Mountain Grove, who replied giving the property and
worth of each of the defendants in detail, the purport
being that two of the makers are "all O. K." being worth
$3,000 to $5,000 above exemptions, others worth less but
"considered good," "honorable and industrious," etc.
Another letter of inquiry was sent to and answered by J.
M. Hubbard, president of the First National Bank at
Mountain Grove, in which he was asked in confidence as
to the financial standing of each maker of the note and
his "candid opinion of the loan as an investment."   His
answer is that he would have loaned each maker his
proportional part of the note and "they are all good
farmers and part of them are patrons of this bank.   Now
I consider each separately good for his proportionate
part, but I don't consider either one single good for the
whole amount, for they are not able or worth the amount,
but each is good for his proportionate part at this time
and I hope the future will prove a verification of these
indications.'

"This note was then three months old; that plaintiff
stated that he understood it was given in part payment
of a horse and no intimation is made by any of these
persons that anything is wrong with the note or that any
party thereto was thinking of contesting it.   It is not
shown when the defendants discovered the fraud of which
they complain but neither the bank officers nor Mr. Farns-
worth, living in the same neighborhood, indicated that
they had then heard of anything wrong.   It is true that
J. H. Hubbard is one of the parties who had been given
a share in the horse (plaintiff not knowing this how-
ever) and he might be friendly to Tuck but not so of
the others.

"The plaintiff did not buy the note at this time and in May, 1912, Tuck again offered him this note and a Texas note in a letter saying: 'As to the Mountain Grove notes I would endorse them as I am confident they are all O. K. The horse is doing extra good and they are extremely well satisfied with him and that is the keynote to horse paper. That alone makes it good when everything else fails. The Texas paper is strong enough that collection can be forced on it. I would consider it quite an accommodation and a personal favor if you could place these two sets of notes for me.'

"The plaintiff then bought the notes mentioned, the face value of which aggregated $1626.68, and paid therefor $1586.68. His profit was $40 and the accrued interest not then due. There is no question as to plaintiff having paid this amount for these two notes as this was proven not only by plaintiff but by documentary evidence. The Texas note was later paid without trouble. The notes in question were assigned to plaintiff 'without recourse' as Tuck stated that he did not and would not endorse any of the paper sold by him. There was a credit on this eight hundred dollar note of $266 made on the same date as the date of the note of which plaintiff knew when it was first offered to him, but nothing was said as to this credit and plaintiff made no inquiry as there was nothing unusual. The plaintiff testified positively that when he bought the note he had no knowledge or information or even suspicion of any fraud in its procurement.

"The defendants offered no evidence, except some of the defendants testified that *they* had never paid anything on the note. The defendants state the facts most favorably to them in these words: 'The plaintiff purchased the notes, amounting to one-third of all he had, on statements from men that knew the makers of the notes and which statements the plaintiff himself in his letter to J. M. Hubbard said would lead him not to consider the notes and took them from Tuck endorsed without recourse, when Tuck before had written him that he would endorse them; took them endorsed without recourse by a man that he believed

to be solvent; took them on men that lived one hundred and seventy miles from him and men that he had not heard of prior to the purchase of notes; did not *know* whether they were farmers or not, whether they were worth a thousand dollars or nothing, and whether they existed or not and endorsed by the only man he believed to be solvent without recourse.'

"The evidence has been set out at some length to see if there is any substantial evidence justifying a finding on the evidence that plaintiff had actual knowledge of the fraud in procuring the note or had knowledge of such facts that his action in taking the note amounted to bad faith, as that is the only question in the case. This question we think is wholly apart from any suggestion that plaintiff acted with poor business judgment in buying a note on the representation made to him and with no actual knowledge as to the financial worth or integrity of the makers. Evidence which raises a doubt as to a note not being a safe investment because of the risk taken as Fraud. to the *solvency* of the makers must not be taken as equivalent to showing knowledge of fraud in the procurement of the note. The price paid is so nearly equal to the full value of the note that no point is made as to that indicating fraud, but on the contrary it is a strong argument of the purchaser's good faith. It is seldom that a man, who is anxious to rid himself of a note because of his fraud in procuring it, can sell it to another, who knows such fact, for full value.

"The fact that plaintiff took the note endorsed without recourse by the payee is not a badge of guilty knowledge of the fraud. To hold that a transfer in that manner casts suspicion on the title of the holder is to impair the negotiability of commercial paper. [Mayes v. Robinson, 93 Mo. 114, 122; 4 Ency. Law (2 Ed.) 273; 7 Cyc. 809; Leavitt v. Thurston, 113 Pac. 77, 38 Utah, 351; Kelley v. Whitney, 30 Amer. St. 697, 45 Wis. 110; Bank v. Hatcher, 66 S. E. 308, 151 N. C. 359; Borden v. Clark, 26 Mich. 410; Page v. Ford, 131 Pac. 1013, 65 Ore. 450; Stevenson v. O'Neal, 71 Ill. 314; Hatch v. Barrett, 34 Kan. 223, 8 Pac. 129.]

"It appears, therefore, that considering the evidence as it is in the record, there is no substantial evidence showing that plaintiff was other than a holder in due course, that is, took the note in good faith and for value before maturity and without notice of any defect in the title as defined by Sections 10025 and 10026, Revised Statutes 1909.

"The question arises then, and the able briefs discuss this question only, whether plaintiff's guilty knowledge is shown or may be inferred from the *lack* of credible evidence on plaintiff's part showing the contrary, the jury being the sole judges of such credibility. This question arises on the rule of law, codified by the Negotiable Instrument Law, Section 10029, that when fraud or other such infirmity in the note is shown, then the burden is cast on the plaintiff as holder to prove himself a holder in due course. The concrete question is whether a plaintiff, as holder of the note by assignment, can, in case it turns out the note was originally tainted with fraud, in any case by oral evidence (and such his evidence must generally be in whole or in part) discharge this burden of proof so as to entitle him to a verdict; or may the jury in all cases more or less arbitrarily disbelieve the plaintiff's evidence, though uncontradicted and unimpeached and free from impeaching circumstances, and from *lack* of what it deems credible evidence to the contrary find that plaintiff had actual knowledge of the infirmity or knowledge of facts which made his taking the instrument an act of bad faith as required by Section 10026, Revised Statutes 1909. It would appear from a reading of this section that, notwithstanding Section 10029 casts the burden of proof on plaintiff to prove his good faith and lack of notice of the fraud on purchasing the instrument, yet in order to constitute notice of the fraud there must be a finding that plaintiff had *actual* knowledge of the fraud or of facts which make his taking the instrument an act of bad faith; and it is not sufficient to defeat plaintiff that the facts in evidence raise a suspicion of guilt:

*Guilty Knowledge.*

Downs v. Horton.

knowledge or that the facts known to the plaintiff would have put an ordinary prudent man on inquiry. It seems illogical to hold that mere disbelief of positive testimony showing innocence should be more potent in this respect than belief of facts in evidence exciting suspicion and putting a prudent man on inquiry.

"It is generally held that the Negotiable Instrument Law, including the sections just referred to, is a mere codification of the general law on that subject. [3 R. C. L. sec. 31, p. 853; Ogden on Neg. Instruments, 253 and 256; Crawford on Neg. Instruments (3 Ed.), p. 5; Selover, Negotiable Instruments (2 Ed.), p. 1.]

Statute a Codification

"Corpus Juris, vol. 2, sec. 1291, p. 983, speaking of our Section 10029, Revised Statutes 1909, says: 'This provision, as far as shifting the burden on to the holder is concerned, has been applied in many cases, but is merely declaratory of the common law.' The cases cited support this statement. [See, also, Link v. Jackson, 158 Mo. App. 63, 139 S. W. 588.] Of course the ruling of a particular court on some particular phase of the law may be found out of harmony with the general law and in conflict with the codification of the same in the Negotiable Instrument Act, but rarely, if at all, will such act be found to have changed the general law of Negotiable Instruments.

"Certain it is that Section 10029, Revised Statutes 1909, enacted in 1905, casting the burden of proof on the holder to prove his good faith and lack of notice of the fraud when fraud has been shown in the procurement of the note, is a codification of and in accordance with the law of this State as previously established. [Hamilton v. Marks, 63 Mo. 167, 178; Hahn v. Bradley, 92 Mo. App. 399, 404; Bank v. Hammond, 124 Mo. App. 177, 180, 101 S. W. 677; Bank v. Hammond, 104 Mo. App. 403, 409, 79 S. W. 493.]

"This court fell into error by holding that the Negotiable Instrument Act changed the general law by

Consideration. including want or failure of consideration unmixed with fraud as one of the things the proof of which cast on the holder the burden of proving himself a holder in due course. [Bank v. Mills, 143 Mo. App. 265, 127 S. W. 425; Bank v. Dowler, 163 Mo. App. 65, 70, 145 S. W. 843.] Such error was corrected, however, in Hill v. Dillon, 176 Mo. App. 192, 209, 161 S. W. 881, and in Bank v. Wood, 189 Mo. App. 62, 173 S. W. 1093, and the law declared as it had been before the codification was adopted as shown by Hahn v. Bradley, 92 Mo. App. 399, 404.

"It is equally true that Section 10026, Revised Statutes 1909, declaring that the notice of fraud in procuring the note which will defeat a holder for value before maturity must amount to actual knowledge of the fraud or knowledge of facts showing bad faith in taking the note, is likewise a codification of the prior law on that subject, and it is now the law and was before the Negotiable Instrument Act was adopted in 1905 that knowledge of facts which would excite suspicion or put a reasonable man on inquiry or even negligence is not sufficient to charge a purchaser of a note with notice of the fraud. [Hamilton v. Marks, 63 Mo. 167; Hayes v. Blaker & Co., 138 Mo. App. 24, 29, 119 S. W. 1004; Mayes v. Robinson, 93 Mo. 114, 5 S. W. 611; Jennings v. Todd, 118 Mo. 296, 24 S. W. 148.] In the Mayes case it is said: 'Mala fides alone can open the door to such inquiry. Gross negligence, even, is not sufficient; actual notice of the facts which impeach the validity of the note must be brought home to the holder. [Johnson v. McMurry, 72 Mo. 278.]'

" 'Knowledge of facts which would put a prudent man on inquiry is not sufficient to affect the title of an indorsee of a negotiable instrument purchased before maturity. Nothing short of actual knowledge or bad faith will defeat his title.' [Bank v. Hammond, 104 Mo. App. 403, 409, 79 S. W. 493.] That when the evidence is all before the court there must be substantial evidence and not a mere lack of it by disbelieving plaintiff's evi-

dence is clearly shown by Wilson v. Riddler, 92 Mo. App. 335, 339, holding that: 'The finding against plaintiff on this branch of the case cannot be permitted to stand without overturning well-settled principles of law governing commercial paper. A purchaser of such paper may have cause for suspicion of defect of title in the holder; he may be negligent, or he may have knowledge of circumstances that would arouse the suspicion of a prudent man and put him on inquiry for further information; yet, in the absence of bad faith, his title will be upheld.'

"The law is the same in this respect since the adoption of the Negotiable Instrument Law. [Link v. Jackson, 158 Mo. App. 63, 81, 139 S. W. 588; Bank v. Railroad, 172 Mo. App. 662, 676, 155 S. W. 1111; Reeves v. Letts, 143 Mo. App. 196, 199, 128 S. W. 246.]

"We fully agree that the Negotiable Instrument Act, Sec. 10029 places on plaintiff, in cases where the note is obtained by fraud, the burden of proving all the facts making him a holder in due course as defined by Sec. 10022, and this includes his good faith and his having no notion of any infirmity or defect of title. While some courts have held that proof by plaintiff of his purchase for full value before maturity is alone sufficient to make him, prima-facie at least, a holder in due course, such is not the rule under the Negotiable Instrument Act.

"In 1 Daniel on Negotiable Instruments (6 Ed.), sec. 819, p. 979, speaking of the Negotiable Instrument Act, it is said: 'In accordance with what is considered as the effect of the statute, it has so far been generally held that on a showing of fraud on the part of the payee . . . the plaintiff must sustain the burden of proof that he is not only a holder for value and before maturity, but also without notice. This seems clearly to be required by the statutory definition of "a holder in due course." '

"In Ruling Case Law, vol. 3, sec. 245, p. 1040, it is said: 'A broader view, and it would seem a better one, is that, upon proof of fraud or illegality, an obligation

is imposed on the plaintiff to prove that he came fairly into possession of the instrument under such circumstances as entitle him to recover. Evidence that the note was taken for value before maturity will not meet the requirement. The plaintiff cannot prove himself a bona fide purchaser of the note merely by showing that he paid value for it before maturity. He must go further, and show that he had no knowledge or notice of the fraud. Specifically he must disclose the facts and circumstances under which he acquired the paper.' This we think is good law and fully supported by the authorities.

"The next question arises whether after plaintiff has gone forward and shown his purchase for value before maturity in good faith and disclosed all the facts and circumstances attending his acquisition
Substantial Evidence. of the note, all of which are consistent with good faith and negative any notice of the fraud and no damaging or discrediting circumstances of substantial value are shown and defendant produces no countervailing or impeaching evidence, may the jury yet by *disbelieving* plaintiff's evidence make a finding that after all plaintiff did have actual knowledge of the fraud and that there were facts known to him which made his act in taking the note bad faith on his part. Is not such a verdict unsupported by any substantial evidence? Answering this Ruling Case Law, vol. 3, sec. 245, p. 1041, says: 'While it must not appear from his own case that he was chargeable with notice, yet the ultimate fact that he had actual notice must be proved by the opposite party. The rule requires only that the party disclose the facts and circumstances attending the transfer of the instrument; if from this evidence it appears that he had no knowledge or notice, he has satisfied the requirement. The ultimate burden of proof as to good faith rests, it is understood, upon the defendant, inasmuch as he is the party setting up that fact; and the evidence being balanced upon the question at the conclusion of the case, the plaintiff is entitled to recover.' The cases cited support this view.

"Unless the Negotiable Instrument Act has changed the law in this respect such is the law in this State. It has been repeatedly held that when plaintiff's evidence discloses all the facts and shows all the elements constituting him a holder in due course, discloses no damaging or impeaching facts and is uncontradicted, then he is entitled to recover. [Johnson v. McMurry, 72 Mo. 278; Henry v. Sneed, 99 Mo. 407, 422, 12 S. W. 663; Wright Inv. Co. v. Frisco Realty Co., 178 Mo. 72, 80, 77 S. W. 296; Langford v. Varner, 65 Mo. App. 370, 374; Jones v. Burden, 56 Mo. App. 199.]

"In Leavitt v. Taylor, 163 Mo. 158, 170, 63 S. W. 385, this is said:

" 'It is well settled that mere suspicion alone that a negotiable note is without consideration, or was obtained by fraud, brought home to the transferee before he acquires the note, will not be sufficient to defeat a recovery upon the note by him, but in order to do so, actual notice of the facts which impeach the validity of the note must be brought home to him. [Mayes v. Robinson, 93 Mo. 114; Inv. Co. v. Vette, 142 Mo. 560.] This is exactly the meaning of Section 10026, Revised Statutes 1909.'

"In Hayes v. Blaker, 138 Mo. App. 24, 119 S. W. 1004, this appears: 'When proof is made that the holder received the paper before maturity in good faith for a valuable consideration, the burden devolves on the maker to prove the holder had actual notice of the specific fact which originally would affect the validity of the paper. [Johnson v. McMurry, 72 Mo. 278.] Such notice needs not be established by direct proof but may be inferred by the triers of fact from facts and circumstances, but it should not be inferred in law from facts and circumtances of a nature to put a prudent man on inquiry.' This is the law generally. [8 C. J. sec. 1295, p. 989.]

"It will be noted that the adjudged cases and text writers frequently use the expression that 'the burden of proof again shifts to the defendant' when the plaintiff has successfully shown himself a holder for value, but this is somewhat inaccurate. A better theory is

that when it is shown that the note has been in guilty hands the law *presumes* that it remains in such hands until the holder, because of having peculiar knowledge of the facts, rebuts such presumption by disclosing his knowledge of the facts.    [Hamilton v. Marks, 63 Mo. 167, 178.]    This presumption like all presumptions disappears in the light of the facts, and when plaintiff has disclosed the facts within his knowledge the defendant may put in his evidence if desirable, and then, all the evidence being in, the case goes to the jury only in case    there    is    substantial    evidence    or    reasonable inference therefrom supporting the theory that plaintiff had actual knowledge of the fraud or such facts that his action in taking the instrument amounted to bad faith.    This is not a case where the plaintiff by reason of the jury discrediting his evidence fails to prove essential facts of his case.    It arises on making good an independent affirmative matter of rebuttal arising in the reply to the defense of fraud.    [Taylor v. Telegraph Co., 181 Mo. App. 288, 298, 168 S. W. 895; Hurck v. Railroad, 252 Mo. 39, 47, 158 S. W. 581.]

''The judges and text-writers had constantly used the term 'burden of proof' and 'shifting of the burden of proof' back to defendant in discussing this subject, and there is no reason to say, as intimated in Link v. Jackson, 158 Mo. App. 63, 86, 139 S. W. 588, that any other or different meaning was intended when codifying the general law into the Negotiable Instrument Act.

Burden of Proof.

''This is contrary to the ruling of this court in several cases where it is in effect held that no matter how strong plaintiff's evidence makes a case showing him to be a holder in due course and defendant introduces no evidence, yet the evidence being oral, the question is one for the jury who may without cause disbelieve plaintiff's evidence and find for defendant.    [Link v. Jackson, 158 Mo. App. 63, 86, 139 S. W. 588; Hill v. Dillon, 151 Mo. App. 86, 131 S. W. 728; Johnson County Sav. Bank v. Mills, 143 Mo. App. 265, 269, 127 S. W. 425.]

"Such ruling it seems overlooks the fact that the note itself makes a prima-facie case for plaintiff, and by Section 10029 the burden is only placed on plaintiff to overcome the prima-facie defense arising from fraud in procuring the note. This question arises on facts presented in plaintiff's reply and is different from plaintiff's failure to prove the facts of his petition necessary to constitute a cause of action. This ruling also ignores the requirement of Section 10026 that when all the evidence is in the defense of fraud must fail  unless it is shown that plaintiff had actual notice of the fraud or of facts making his purchase of the note an act of bad faith.

"In Bank v. Railroad, 172 Mo. App. 662, 677, 155 S. W. 1111, the court quotes Section 10026 and adds: 'A mere suspicion of such infirmity or defect, or knowledge of facts which would ordinarily put one on inquiry, is not sufficient; it must appear that the holder had actual knowledge thereof.' The court there held that there was nothing to submit to the jury, as it did in Reeves v. Letts, 143 Mo. App. 196, both cases arising under the Negotiable Instrument Act.

"In Johnson v. Grayson, 230 Mo. 380, 400, 130 S. W. 673, speaking of notice of infirmities in the note sued on the court said: 'There was nothing in the testimony that showed actual knowledge, and the burden was on *defendant* to show he had actual knowledge. [Leavitt v. Taylor, 163 Mo. 158; Brown v. Hoffelmeyer, 74 Mo. App. 385; Wilson v. Riddler, 92 Mo. App. 335.]' The full meaning of this will be shown by the cases cited. In remanding that case the court said: 'However, if on a retrial the evidence to show plaintiff's actual knowledge of a lack of consideration is no stronger than it was at the former trial, then this question should not be submitted to the jury, for it was not sufficient to overcome plaintiff's prima-facie case on the point of consideration.'

"In Hill v. Dillon, 176 Mo. App. 192, 200, 161 S. W. 881, this court recognized the rule of law stated but held that the statute, Negotiable Instrument Act, has changed

this rule. This we think is error since the former decisions in this state were in accord with the general law and the Negotiable Instrument Law merely codifies such law.

"We therefore disaprove of the cases of Link v. Jackson, 158 Mo. App. 63, and Hill v. Dillon, 151 Mo. App. 86, and kindred cases in so far as they hold that in cases where the note is obtained by fraud the plaintiff as holder cannot by verbal evidence, unimpeached and uncontradicted, make a case of his being a holder in due course strong enough to warrant a directed verdict for. him.

"We now hold that the law as declared by the Negotiated Instrument Act is the same in this respect as it was before such act and as declared in: Wright Inv. Co. v. Friscoe Realty Co., 178 Mo. 72, 80, 77 S. W. 296; Leavitt v. Taylor, 163 Mo. 158, 170, 63 S. W. 385; Henry v. Sneed, 99 Mo. 407, 422, 12 S. W. 663; Hayes v. Blaker & Co., 138 Mo. App. 29, 119 S. W. 1004, and kindred cases.

"We also call attention to the fact that there are many cases not involving the Negotiable Instrument Law where it is held that an affirmative defense, as to which the burden of proof is on defendant, may be made sufficiently strong by clear and unequivocal verbal evidence that if same is not contradicted or impeached the court will direct a verdict for defendant. [Guffey v. Ry. Co., 53 Mo. App. 462, 465; Moore v. Tel. Co., 164 Mo. App. 165, 148 S. W. 157; Ruheottom v. Western Union Tel. Co., 194 Mo. App. 234; Bank v. Hainline, 67 Mo. App. 483, 487; Morgan v. Durfee, 69 Mo. 469, 475.] Many others might be cited. The latest case by the Supreme Court is Guthrie v. Holmes, 272 Mo. 215, 233, 198 S. W. 854.

"There are many cases from other states upholding this view of the law which are cited in appellant's able brief and will be cited in the notes of the Reporter, but which we need not now discuss.

"This case should be reversed and remanded and in so holding we are in accord with Reeves v. Letts, 143 Mo. App. 196, 199, 128 S. W. 246, and Bank v. Railroad, 172 Mo. App. 662, 676, 155 S. W. 1111.

Downs v. Horton.

"We are in apparent conflict, however, with South-west Natl. Bank v. House, 157 S. W. 809, by the Kansas City Court of Appeals, which we said in Hill v. Dillon, 176 Mo. App. 199, overrules Reeves v. Letts by the same court. We are also in conflict with Hammond v. Bank, 124 Mo. App. 177, by the St. Louis Court of Appeals. It is highly desirable that this question be finally settled, for if all such cases when based on oral evidence must go to the jury who are the sole judges of the credibility of the witnesses and the weight to be given to their evidence, then there is never any need to go through the evidence to determine whether there is or not any evidence justifying the finding of actual knowledge or bad faith of the plaintiff. The case is therefore reversed and remanded and certified to the Supreme Court as being in conflict with the cases mentioned."

We fully concur in the conclusions reached by the learned Court of Appeals in the foregoing opinion. The lack of harmony in the decisions which it points out has no doubt arisen out of different interpretations that have been put upon what is now Section 845, Revised Statutes 1919. In construing that section it should be borne in mind that the Negotiable Instrument Law, enacted in 1905, of which it is a part, is just what it purported to be, a codification of the then existing laws relating to negotiable instruments. The language of said Section 845, viz., "when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he . . . acquired the title as holder in due course," is merely declaratory of a rule of law that has been recognized and fol-

Burden of Proof. lowed in this State since the decision in Hamilton v. Marks, 63 Mo. 167, by this court in 1876. The "burden to prove," which the statute says is on the holder under certain circumstances, is the same burden that was upon him under like conditions before the enactment of the statute. The term "burden of proof" has two distinct meanings. By the one is meant the duty of establishing the truth of a given proposition

or issue by such a *quantum* of evidence as the law demands in the case in which the issue arises; by the other is meant the duty of producing evidence at the beginning or at any subsequent stage of the trial, in order to make or meet a prima-facie case. Generally speaking, the burden of proof, in the sense of the duty of producing evidence, sometimes called the "burden of evidence," passes from party to party as the case progresses, while the burden of proof, meaning the obligation to establish the truth of the claim by preponderance of the evidence, rests throughout upon the party asserting the affirmative of the issue, and unless he meets that obligation upon the whole case he fails. *This burden of proof never shifts* during the course of the trial. [10 R. C. L. 897.] The writer of the opinion in Link v. Jackson, 158 Mo. App. 63, 87, says: "Under Section 10029, Revised Statutes 1909 (now Sec. 845, R. S. 1919.)] 'burden of proof,' as therein provided, is used in the strict sense of 'burden of proof,' and not in the sense of 'burden of evidence,'" and he cites Hamilton v. Marks, *supra*, as supporting that proposition. In this we think he was mistaken. WAGONER, J., in the latter case, after an exhaustive review of the American and English cases. adopted this language from Daniels on Negotiable Instruments as expressive of the conclusions he had reached:

"There may be, at this juncture, a *shifting of the burden of proof* from the defendant to the plaintiff, for the principle is well established that if the maker or acceptor, who is primarily liable for payment of the instrument, or any party bound by the original consideration, proves that there was fraud or illegality in the inception of the instrument; or if the circumstances raise a strong presumption of fraud or illegality, the owner must then respond by showing that he acquired it bona-fide f r  li e, in the usual course of business while current, and under circumstances which create no suspicion that he knew the facts which impeach its validity." On both reason and authority it must be held that the "burden to prove" of the statute is the "burden of evidence,"

as distinguished from the "burden of proof" in its strict sense. Let us take a typical case of the class under consideration, where the indorsee sues the maker of a note which had its inception in fraud. The petition alleges the execution of the note and as an affirmative defense the answer alleges the facts constituting the fraud and avers that the plaintiff took the instrument with notice of such facts; reply merely traverses the averments setting up the affirmative defense. The only issue raised on such pleadings is tendered by the answer and the defendant has the affirmative. It, therefore, devolves upon him to show by the greater weight of evidence that the note was obtained by fraud and that plaintiff had actual knowledge of the facts constituting the fraud when he took it, or knowledge of such facts that his action in taking the instrument amounted to bad faith. This obligation, the burden of proof in its primary sense, rests upon the defendant throughout the trial, and if he fails to discharge it, the plaintiff is entitled to recover. [Johnson v. McMurry, 72 Mo. 278; Johnson v. Grayson, 230 Mo. 380, 400.] That being true, it is incumbent upon defendant to first offer evidence; he thereupon makes proof of facts tending to show the fraud pleaded and nothing more. This evidence does not establish or tend to establish any specific fact showing that plaintiff had knowledge of the fraud; it merely raises a presumption in lieu of the fact and the presumption calls upon plaintiff to disclose the facts that are peculiarly within his knowledge. The plaintiff then gives in evidence all the facts and circumstances under which he acquired the paper and the presumption takes flight. Let it be assumed that plaintiff's evidence is such that his good faith and want of notice is the only inference that a fair minded person could draw from it, it then devolves upon defendant, under the burden of proof resting generally upon him, to prove specific facts tending to show plaintiff's actual knowledge of the fraud or his bad faith. Let it be further assumed that defendant offers no such evidence, then clearly he has failed to offer *any* evidence in

287 Mo.—28

support of his affirmative defense that *plaintiff had notice of the fraud when he took the paper,* and the plaintiff on the pleadings is entitled to a directed verdict. In this hypothetical case, the defendant to begin with had both the burden of proof and the burden of evidence; he introduced evidence tending to show that the note was obtained by fraud; this evidence created a presumption that the plaintiff as holder had notice of fraud; the burden of evidence then shifted to plaintiff who gave evidence which entirely destroyed the presumption; the presumption being gone the burden of evidence shifted back to defendant who, in his efforts to bring home to plaintiff notice of the fraud, was then in exactly the same position as he was before he offered any evidence at all. Consequently there was no evidence to take him to the jury.

The principles governing the shifting of the burden of evidence during the progress of a trial, by reason of the presumptions that rise and disappear as the evidence goes forward, are not peculiar to suits on negotiable instruments. They are of general application. [Guthrie v. Holmes, 272 Mo. 215, 233, 234; Hurck v. Railroad, 252 Mo. 39, 48; Taylor v. Telegraph Co., 181 Mo. App. 288, 298.]

Guthrie v. Holmes, supra, is fairly illustrative. It was a suit for damages against the owner of an automobile, for personal injuries due to negligent driving of the car by the chauffeur in the absence of the owner. The sharply contested issue was whether at the time of the accident the chauffeur was acting within the scope of his employment. Plaintiff had the affirmative of this issue and put on evidence showing that the defendant was the owner of the car and that the chauffeur was in his general employment. Defendant then introduced evidence tending to show that the chauffeur was out on a mission of his own—a drunken joy ride—when he ran the plaintiff down. Plaintiff offered no substantial evidence in rebuttal. It was held that the evidence offered by plaintiff in chief raised a presumption that the chauf-

Downs v. Horton.

feur at the time of the accident was within the scope of his employment. It was further held that defendant's evidence destroyed this presumption and the burden then shifted to plaintiff requiring him to make positive proof that the chauffeur was at the time engaged in the owner's business, and that having failed to make such proof the verdict should have been directed for defendant.

In the instant case the answer averred that the note in suit was obtained by the person who negotiated it through fraud and that plaintiff had notice thereof when he took it. The reply admitted the procurement by fraud, but denied the notice. The presumption, however, that arose from the admitted facts was in no way different from the one that would have arisen from evidence tending to prove those facts, and it was completely destroyed by plaintiff's evidence. It is fully set out and carefully analyzed in the opinion of the Court of Appeals. All reasonable minds would agree that no inference could be drawn from it that plaintiff had knowledge of the fraud, or that he acted in bad faith in taking the note. Defendant then failing to make proof of specific facts tending to show fraud or bad faith, the court should have directed a verdict for the plaintiff.

The judgment is reversed and the cause remanded with directions to the trial court to enter judgment for plaintiff as prayed in his petition. *Brown* and *Small, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAGLAND, C., is adopted as the opinion of the court. All of the judges concur.