460

GALE AND COMPANY, a Corporation
(Plaintiff), Respondent,

v.

William C. MEDLEY (Defendant), Appellant.

No. 29417.

St. Louis Court of Appeals.

Missouri.

April 17, 1956.

William J. Becker, Clayton, for appellant.

Hinkel & Carey, Henry C. Hinkel, Harold D. Carey, Sidney L. James, St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is a replevin suit brought by Gale and Company, a corporation, against William C. Medley to secure possession of a certain Kaiser automobile. The case was tried to the court, without the intervention of a jury, and resulted in a finding and judgment for the plaintiff. From this judgment, defendant has appealed.

On February 19, 1953, the defendant, William C. Medley, visited the annual St. Louis Automobile Show. While there he became interested in a certain type of Kaiser automobile which was on display. He talked to Len Thomas, a Kaiser salesman who was employed by Bill's Motor Sales Company located at 8720 Jennings Road in St. Louis County. The next evening he called on Mr. Thomas at Bill's Motor Sales Company for the purpose of making a trade. Bill's Motor Sales Company did not have in stock the type car which defendant wanted. Mr. Thomas then referred defendant to the Brickey Motor Company. This company was owned and operated by Frank C. Brickey. Brickey Motor Company was a trade name under which Mr. Brickey did business. Mr. Thomas had previously worked for Mr. Brickey.

Defendant went to the Brickey Motor Company's place of business and examined

the car in question. He then returned to the Jennings address and signed an order for the car. This order was accepted, and a formal invoice on the stationery of Brickey Motor Company was prepared. This invoice showed a total purchase price of $3,131.97, an allowance of $1,431.97 on a 1951 Kaiser automobile, and a balance of $1,700 to be financed. The salesman named on the face of the invoice was Len Thomas. The invoice was dated February 20, 1953, and was delivered to defendant on that date. Defendant also received delivery of the car at that time, and delivered the 1951 Kaiser automobile to Brickey. The $1,700 cash balance was not paid on that date. However, defendant signed, in blank, a note and chattel mortgage which he delivered to Brickey at the time. He testified that he knew at the time he was signing a note and chattel mortgage.

On February 25, 1953, at about 10:30 in the morning, defendant and Thomas went to see Mr. Brickey at the latter's place of business. Mr. Thomas, speaking for defendant, told Brickey that defendant was going to finance the car through the Easton-Taylor Trust Company. Mr. Brickey agreed to this. Thereupon, Mr. Thomas and defendant went to the Sears-Roebuck Company in St. Louis where the Easton-Taylor Trust Company had a loan representative. When they arrived there they met Mr. Frayn, an agent for the All-State Insurance Company. His duties were to make loans to be handled through the Easton-Taylor Trust Company. Mr. Frayn agreed to make the loan. Defendant then signed a note for the amount of the loan, $1,700, and executed a chattel mortgage on the car in favor of Easton-Taylor Trust Company. In return, he received a cashier's check for $1,700, dated February 25, 1953, payable to Brickey Motor Company. Defendant and Thomas then went to the Brickey Motor Company and delivered the check to Mr. Brickey. Defendant then made inquiry with reference to the note and chattel mortgage he had signed in blank on February 20th, stating that he would "like for them to be destroyed." Defendant testified: "Mr. Brickey went

through the motion of tearing up a set of papers which he produced off of his desk, and threw them into the waste container. * * * He looked through some papers on the desk, and said: 'Here they are. I will tear them up.' And he tore them up and threw them in the waste container." Defendant did not look at the papers which Mr. Brickey tore up at that time.

Under date of March 25, 1953, one month later, the plaintiff, Gale and Company, sent to defendant through the United States mail a post card on which were the following questions:

"(1) Do you have 1953 Kaiser K1174508 in your possession?

"(2) If not, who does have it?

"(3) Give date and amount of last payment made.

"(4) Where did you make your last payment?

"(5) If you have paid any installments in advance, or entire balance, advise when paid, the amount, and to whom paid.

"(6) Give amount of down payment.

"To insure prompt credit, all payments should be made at our office.

"If, for any reason, you have not purchased or taken delivery of this automobile, notify this company immediately.

"Very truly yours,
"Gale and Company"

Attached to this card was a reply card with blanks for appropriate answers to be made to the questions asked.

Three days later, on March 28, 1953, the officers of the court took possession of the car under authority of the writ issued in this action.

It appears from the evidence that the note and chattel mortgage which defendant signed on February 20, 1953, were not destroyed by Brickey at the time he received

the $1,700 check in payment of the cash balance due on the car. On the contrary, said note and mortgage were filled out and sold by Brickey to the plaintiff company.

The purchase of the note and mortgage was made on behalf of plaintiff by James R. Samuel, Vice-President in charge of buying commercial paper. Mr. Samuel testified that the note and mortgage in all respects were filled in, and that they were endorsed to plaintiff. He stated that consideration in the sum of $1,700 was paid in the purchase of said note and mortgage. At the same time plaintiff purchased a mortgage executed by one L. Williams for $1,600. A check in favor of Brickey Motor Company was drawn in the sum of $3,300 in payment of both mortgages. Mr. Brickey immediately endorsed this check to plaintiff, whereupon plaintiff credited Brickey "for some indebtedness he owed us on other items." At the same time, Brickey delivered to plaintiff an additional check in the sum of $708, which, together with the $3,300 check, fully satisfied the Brickey account with plaintiff. Mr. Samuel further testified:

"Q. Now, prior to February 25th, and specifically prior to the time you purchased this note and mortgage of Mr. Medley's, did you know Mr. Medley? A. No, I did not.

"Q. Did you know anything about him? A. No, I did not.

"Q. Did you have any information whatsoever relative to the transaction in connection with which he issued or executed the note and mortgage in question? A. No, I did not.

"Q. Did you have any knowledge whatsoever of the purchase of the automobile involved from Mr. Brickey? A. No, I didn't.

"Q. Now, I believe you testified that the first monthly installment of the note and mortgage indicated that it was due on the 25th day of March, 1953; is that correct? A. That is correct.

"Q. Was this payment made? A. No, it was not.

"Q. Have any payments ever been made on this account? A. No.

"Q. Was the note and chattel mortgage in default under its terms on the 28th day of March, 1953? A. Yes, it was."

■ The question presented on this appeal is whether there is a triable issue upon the present record as to whether plaintiff is a holder in due course. Plaintiff is presumed to be such, but if it can be shown that the title of the person who negotiated the instrument is defective, the burden is on the holder—the plaintiff in this case— to prove that he acquired the instrument in due course. Section 401.059 RSMo 1949, V.A.M.S.

■ The title of a person who negotiates an instrument is defective when he negotiates it in breach of faith, or under such circumstances as to amount to a fraud. Section 401.055 RSMo 1949, V.A.M.S. In the case at bar there is no doubt but that Brickey committed a fraud upon the defendant when he filled in the blank spaces in the note and chattel mortgage and sold said instruments to the plaintiff. But such instruments, though tainted with fraud, are valid and effectual for all purposes when in the hands of a holder in due course. Section 401.014 RSMo 1949, V.A.M.S.

Appellant says that plaintiff failed to offer proof to show that it was ignorant of the defect in plaintiff's title, and hence was not a holder in due course. To this we cannot agree.

■ Plaintiff offered as a witness its Vice-President, Mr. James R. Samuel, who had charge of the purchasing of commercial paper for the plaintiff company. It was he who bought the note and chattel mortgage from Brickey. Mr. Samuel testified that he did not know Mr. Medley and had no information whatsoever relative to the transaction in connection with which Medley issued or executed the note and

mortgage in question. This evidence was sufficient to satisfy the burden which the law placed upon the plaintiff and, absent any contradictory evidence, entitled plaintiff to a finding in his favor. Downs v. Horton, 287 Mo. 414, 230 S.W. 103.

Finding no error in the record, the judgment is affirmed.

MATTHES, J., and SAM C. BLAIR, Special Judge, concur.