PEOPLES BANK OF AVA, APPELLANT, V. ALLEN M. RANKIN AND D. O.
RANKIN, RESPONDENTS.*

In the Springfield Court of Appeals.  Opinion filed March 2, 1926.

1.—Evidence—Bills and Notes—Contemporaneous Oral Agreement.  Evidence of a contemporaneous oral agreement that a note is to be payable only upon the happening of a certain contingency is not competent to defeat recovery on the note.

2.—Bills and Notes—Contemporaneous Collateral Dependent Written Agreement—Construed Together With Note as One Contract.  A negotiable promissory note and a contemporaneous collateral dependent written agreement, connected by direct reference or by necessary implication, should be construed together as one contract, and such collateral dependent agreement is binding on the payee in the note and transferees with notice.

3.—Corporations—Bills and Notes—Defense Held Available Against Transferee of Note.  Where at time note given in payment of stock in corporation operating chain stores was turned over to transferee bank its cashier had in his possession a letter written by corporation, which stated that all notes and money given for stock would be returned if store was not located in town of maker's residence, the letter and the note given for payment of stock should be construed as one contract, and hence defense that store was not established was available to maker in suit by bank on note.

### On Motions for Rehearing and to Modify.

4.—Same—Same—Available Defense Waived, Under Circumstances, if Maker Requested Bank to Purchase Note.  Though bank had knowledge that note given in payment of stock in corporation operating chain stores was to be held by bank and returned to maker if store was not established in his town, if bank, pursuant to maker's request, purchased such note for value, maker waived agreement, and could not rely on breach thereof as a defense in suit by bank on note.

*Corpus Juris-Cyc. References:  Bills and Notes, 8CJ, p. 196, n. 91; p. 197, n. 92; p. 519, n. 61.  Corporations, 14CJ, p. 623, n. 71; p. 630, n. 64. Evidence, 22CJ, p. 1152, n. 7; p. 1248, n. 29.

Appeal from the Circuit Court of Greene County.—Hon. Orin Patterson, Judge.

AFFIRMED.

*J. S. Clark*, of Ava, *Alfred Page* and *Val Mason*, both of Springfield, for appellant.

(1)  The court should have given instruction "A," directing a verdict for plaintiff.    (a) Because there was no competent evidence that the letter of January 10, 1921, which contains the alleged promise to return defendant's note, was written by anyone having authority

to make such alleged promise for the Industrial Transportation Company. Matlock v. Paregoy, 188 Mo. App. 95, 104; Wade v. Boone, 184 Mo. App. 88, 95-6; Meux v. Haller, 179 Mo. App. 466, 471; Anderson v. Valmer, 83 Mo. 406. (b) Because even if the letter was written by authority of the Industrial Transportation Company, it was independent of and collateral to the contract sued on, and for that reason could not form the basis of a defense. Jennings v. Todd, 118 Mo. 296, 305-6; Simpson v. Van Laningham, 267 Mo. 286, 295; Miller v. Ottaway, 81 Mich. 196, 198. (c) Because the pleaded defense of a verbal agreement that the note was to be held in escrow by the Bank until a store was put in Ava, and to be returned to defendant in the event the store was not put in, does not constitute a defense under the law. Gardner v. Matthews, 81 Mo. 627, 630; Houser v. Andersch, 61 Mo. App. 15, 19; Kessler v. Glayes, 147 Mo. App. 88, 99; Furnace Co. v. Bodwell, 73 Mo. App. 389, 395-6; Hardwood v. Brown, 23 Mo. App. 69, 75; Bank v. Henry, 202 S. W. 281, 283. (d) The note given by defendant and the receipt given at the same time by the agent of the Industrial Transportation Company, together constitute a written contract between the Transportation Company and the defendant, and all prior and contemporaneous negotiations and agreements are conclusively presumed to be merged into this contract. Catterlin v. Lusk, 98 Mo. App. 182, 187; Goller v. Supply Co., 179 Mo. App. 48, 56-7; Wright v. Casualty Co., 206 S. W. 428, 429; Beheret v. Myers, 240 Mo. 58, 75-6; Herboth v. Radiator Co., 145 Mo. App. 484, 495; Tuggles v. Callison, 243 Mo. 527, 536. (2) The court erred in giving instruction No. 2: (a) Because it authorized a verdict for defendant even though the jury might believe that the "understanding" referred to was verbal and prior to or contemporaneous with the signing of the note. See authorities cited under 1-c, supra. Peoples Bank of Ava v. Baker, 193 S. W. 632, 633. (b) Because the facts hypothecated in this instruction might all be true, and still the plaintiff might be entitled to recover, since the instruction ignores the defense of waiver or estoppel, concerning which there was an abundance of evidence. King v. Lusk, 196 S. W. 67, 69; Glasse v. King, 195 S. W. 521, 522; See, also, cases cited under 1-b and c. (3) The court erred in refusing plaintiff's instruction "b." This is the only instruction offered which submits to the jury the only semblance of a defense as shown by the evidence, namely, that there was a prior verbal agreement that the note was not to be paid unless a store was established in Ava, and that the note was to be held by the bank until a store was put in, and to be returned to plaintiff if it was not. This is also the only instruction that tells the jury that the burden of proof is on the defendant. (4) The court erred in refusing plaintiff's instruction "c," relating to the pleaded defense of waiver or estoppel, Guy v.

Woolridge, 226 S. W. 12, 14; Meire v. Bank, 226 S. W. 334, 342-3; Withers v. Railroad, 226 Mo. 373, 400; Schneider v. Schneider, 224 S. W. 1, 4-5; Guffey v. O'Reilley, 88 Mo. 418, 424-5.  (5)  The court erred in refusing instructions "D" and "E".  The answer pleaded fraud and want of consideration, but the evidence wholly failed to sustain such allegations.  The defendant did not ask any instructions submitting either of these pleaded defenses to the jury. It was highly prejudicial not to tell the jury that the issues of fraud and want of consideration were withdrawn from their consideration. (6)  The court erred in refusing instruction "F" telling them that the statements contained in the letter received by Mr. Dobyns, dated January 10, 1921, constituted no defense.  (7)  The court erred in refusing instruction "G," telling the jury that the note given by defendant and the receipt given by the agent of the Industrial Transportation Company, being contemporaneous acts, constitute the contract between the parties, and that all prior and contemporaneous negotiations are presumed to be merged in this written contract. Such certainly is the law.  See authorities cited under 1-d, supra.  (8) The court erred in admitting the letter signed by Scott & Elessi, dated January 10, 1921, and addressed to Mr. Dobyns.  It constituted no defense, and was not shown to have been written by any one having authority to bind the Industrial Transportation Company. Jennings v. Todd, supra; Simpson v. Van Laningham, supra; Miller v. Ottaway, supra; See also cases cited under 1-c.

*Lamar & Evans* and *Hiett & Impey,* all of Houston, for respondents.

(1)  The cashier of the plaintiff bank entered into the particular transaction by which Cornett and Scott & Elessi, agents of the Industrial Transportation Company, procured from the defendant the note in question.  The cashier testified that he told Cornett he would like to have something to show that the people would not be swindled, and that Cornett told him he would write and find out about it; that he would write to the Zone Managers; that shortly after this conversation with Cornett he received a letter from Scott & Elessi.  The testimony of Alex Crumley, Mathis and Claud Crumley is that the cashier of the bank showed them a letter from Scott & Elessi before they subscribed for any stock, and the defendant, Rankin, testified that Cornett showed him the letter before he subscribed for stock. This plainly shows that the cashier of the plaintiff bank was participating with Cornett in the sale of stock,  "One who enters into a particular agreement with the agent of another may be estopped both as against the principal and third persons in interest to say that the agent had no authority to enter into the transaction."  2 C. J.,

p. 467, par. 76; Bridge Co. v. Waco, 20 S. W. 137; Sherrod v. Duffy, 125 N. W. 366 (2) The letter written by Scott & Elessi, Zone Managers and stock salesmen of the Industrial Transportation Company, was not an independent and collateral agreement as contended by the respondent, but on the contrary, the note and letter are to be considered and construed as one entire contract. Simpson v. Lanningham, 267 Mo. 286; Bank v. Kreigshauser, 211 Mo. App. 33-40; Bank v. Stone Company, 205 Mo. App. 588-591-592; Bank v. Koch, 255 S. W. 581-584; Bank v. Kirk, 134 N. E. 772; Bank v. Bernard, 191 N. W. 283; Seaman v. McNamara, 193 N. W. 377; Nichols v. Lane, 192 N. Y. S. 362. (3) The cashier of the plaintiff bank disclosed by his testimony, and before the plaintiff had rested its case, that he knew before he bought the note in question that the Industrial Transportation Company had agreed to return the notes given for stock if the store was not put in. This cast the burden upon the plaintiff to show a performance of the contract on the part of the company before it could recover on the note, and this is true where one of the promises constituting the agreement is a negotiable note. Seaman v. McNamara, 193 N. W. 377; Teitz v. Teitz, 62 N. W. 939; Mahar v. Montello Co., 130 N. W. 949-951; 6 R. C. L. 951; 13 Corp. Jur. 627; Naftzeger v. Gregg, 31 Pac. 612; Kelley v. Webb, 27 Tex. 368; Mix v. Ellsworth, 5 Ind. 517; Hunt v. Livermore, 5 Pick. (Mass.) 395; Downs v. Horton, 287 Mo. 414. (4) One who had actual knowledge of a contract between the original parties to a note was not an innocent purchaser of the note and was not a holder in due course. Gibbs v. Metcalf et al., 256 S. W. 1109. (5) The plaintiff asked the court to give the following instructions: "You are instructed that under the law and the evidence your verdict must be for the plaintiff." The court refused the instruction. The court did not err in so doing. All the instructions asked by the plaintiff which the court refused were inconsistent with the first instruction asked by the plaintiff. If the plaintiff did not want to stand on the peremptory instructions asked by it, it should have taken a nonsuit. Everhart v. Bryson, 244 Mo. 507-516; Kinkaid v. Estes, 262 S. W. 399-402. (6) The consideration for the note was that a store was to be put in at Ava by the Industrial Transportation Company. The store was to be put in or the note returned to the maker. The store was not put in and the consideration for the note failed. The note was void for want of consideration. "Voluntary ratification by a payment of interest or otherwise of a note that is void for want of consideration after knowledge of the fact that it is void has come to the maker does not make it. a valid note nor place the maker under any obligations to the payee to pay it." Beland v. Brewing Association, 157 Mo. 593-603; Sherrod v. Duffy, 125 N. W. 366: The same would be true of the purchaser of a note with

notice. (7) The cashier of the plaintiff bank testified that the defendant, Rankin, requested him to purchase the note. The defendant, Rankin, testified that he never did ask the cashier of the plaintiff bank to purchase the note, but if it were conceded that the cashier of the plaintiff bank was right in his testimony, then the cashier knew at the time he claimed the defendant asked him to buy the note that the note was to be given back to the defendant if the store was not to be put in. At the time the cashier says the defendant asked him to buy the note the defendant did not know but that the store would be put in as per agreement. Hence the defendant would not be estopped to contest the note in the hands of the purchaser who had notice of the agreement for the reason that the defendant was referring to the then existing status of the note and to defenses then known, and did not exclude such as might subsequently arise. Jennings v. Todd, 118 Mo. 296-306. (8) The cashier of the plaintiff bank, at the time he claims to have purchased the note on February 9, 1921, knew that the store would not be put in on February 15, 1921; he also knew that if the store was not put in on February 15, 1921, the defendant's note should be returned to him. "Where the breach of the executory agreement had occurred to the knowledge of the endorsee, before he had purchased the note, he would not be protected." Jennings v. Todd, 118 Mo. 296-305-306. (9) "Letters written in connection with the making of a note and containing part of the contract are admissible in a suit between the maker and one who took the note after maturity." Marietta Sav. Bank v. James, 66 Ga. 286.

BRADLEY, J.—This is a suit on a promissory note in the principal sum of $2000. The cause was filed in Douglass county, but the venue was changed to Greene where trial was had to a jury, and verdict and judgment went for defendants and plaintiff appealed.

The petition alleges the execution of the note payable to the order of the makers, the endorsement by them and the purchase by plaintiff.

Defendants in their answer admit signing and endorsing the note and deny generally all other allegations. Further answering defendants allege that defendant Allen M. Rankin is the principal maker, and that D. O. Rankin is, as between them, an accommodation party.

Defendants further allege that the note was obtained by fraud and is without consideration and that plaintiff before it bought said note had knowledge of such fraud and failure of consideration or had knowledge of such facts that its action in purchasing said note amounted to bad faith; that said note was given for stock in a store to be established in Ava, Mo., by the Industrial Transportation

220 M. A.—14.

Company; that V. A. Dobyns was, and for a long time had been, cashier of plaintiff bank and was a man of influence in the community and that defendants reposed confidence in him, and that the said Dobyns represented that he had subscribed for stock in said Industrial Transportation Company and induced defendants and others to subscribe; that the said Dobyns represented that the money paid on notes given for stock would be placed in plaintiff bank and held there in escrow until the store was established and in operation in Ava, and that if the store was not established the money and notes would be returned, and defendants say:

"That having confidence in the business judgment, standing and ability of the said V. A. Dobyns and believing the above statements and representation to be true and on the express promise and agreement of the said agent of said Industrial Transportation Company and of V. A. Dobyns cashier that the note sued on would be held by said V. A. Dobyns, cashier of plaintiff Bank in said bank and would not be delivered to said Industrial Transportation Company unless and until the said store was established and if not established would be returned to defendant, the defendants herein by reason of said promises and of their confidence in the business judgment and in the promises of the said V. A. Dobyns were induced to and did execute the note sued on."

Defendants further allege that Dobyns did not in good faith subscribe for any stock, but pretended to subscribe in order to deceive and mislead defendants and others.

The reply is a general denial and allegations that plaintiff bank purchased the note "solely upon the representation, solicitations and at the request of defendants."Also allegations in the nature of estoppel are made in the reply.

Several separate assignments are made, but all are in effect included in the assignments based on the refusal of the trial court to direct a verdict for plaintiff and on the instructions.

The note was executed January 13, 1921, due six months thereafter and was payable to "myself or order," and was signed and endorsed by defendants and turned over to Leo Cornett, a stock-salesman for the Industrial Transportation Company. The consideration recited in a receipt was 144 shares of preferred and 16 shares of common stock in the said Industrial Transportation Company.

Plaintiff introduced the note and evidence of its purchase for value and before maturity, and the nonpayment thereof and rested.

When we use the term defendant hereinafter we have reference to defendant Allen M. Rankin. He is the defendant with whom all the agreements and promises were made and to whom all representations were made. Defendant D. O. Rankin, the father of Allen M.,

had no connection with the matter except to sign and endorse the note.

Defendant Allen M. Rankin, teacher and farmer, at the time of the execution of the note, was about 22 years of age and was attending the high school in Ava. The Industrial Transportation Company was a chain grocery store concern and in January, 1921, was supposed to be operating 127 stores in different sections of the United States and was around Ava reputed to be worth several million dollars. Before a store was established in a community that community was required to purchase a certain amount of stock in the company. Leo Cornett, agent and stock salesman of this company, was endeavoring to sell enough stock in Ava and vicinity to establish one of the chain stores in Ava. Several persons in and around Ava subscribed for stock and among these were V. A. Dobyns, plaintiff's cashier, T. J. Moorehouse and defendant. Dobyns subscribed for stock to the amount of $250 and Moorehouse to the amount of $1500, and defendant to the amount of $2000. Dobyns gave his note for $250 and Moorehouse his two notes for $500 and $1000 respectively. Plaintiff bank through Dobyns purchased these three notes aggregating $1750 and issued therefor time certificates of deposit maturing at the same time the notes matured. Altogether Dobyns acting for plaintiff bank, purchased stock notes aggregating $4625 and issued certificates of deposit in payment.

It was planned for defendant to be manager of the store to be established at Ava, and then it was planned to make Moorehouse manager at Ava and defendant was to be manager of a store to be established at Mountain Grove. Cornett had promised defendant and all other stock purchasers that notes or money, if cash was paid, would be returned if the store was not established at Ava or if the purchaser was dissatisfied or desired to have his note or money back. Cornett put on the stock sale in January, 1921, and the store was to be established and in operation by February 15, 1921. All of the stock notes purchased by plaintiff bank were given on and between January 10th to 26th. It does not appear just when the bank purchased these various notes except in the case of the note in suit.

Business complications arose which made Moorehouse unavailable for manager, but just at what time or what stage of the stock sale drive Moorehouse became unavailable does not definitely appeal. When Moorehouse was eliminated as manager he wanted his notes back, and Dobyns did not desire, so he testified, to invest unless Moorehouse was manager and also wanted his note back. On February 9, 1921, six days prior to the time when the store at Ava was to be established and in operation, Dobyns, acting for plaintiff bank, made a deal with Cornett whereby the bank became the owner of the note sued on and Dobyns and Moorehouse got their notes back.

The deal was arranged in this manner. Dobyns for the bank had previously purchased his own and the Moorehouse notes and had issued therefor time certificates of deposit aggregating $1750 as above stated. When he made the deal with Cornett on February 9th he received from Cornett defendants' note of $2000 and delivered to Cornett a time certificate of deposit for $250 and took up and cancelled his own and the Moorehouse notes. By this deal the bank became the owner of the note sued on and surrendered the Dobyns and Moorehouse notes. Also by this deal the bank was whole, if the note sued on was paid, and Dobyns and Moorehouse were also whole, regardless of the fortunes of the Industrial Transportation Company.

It was not generally known that Dobyns had escaped until long after February 9th when the deal was made whereby he got his note back. On June 21, 1921, he signed a written agreement relating to the employment of an attorney who was to represent the Ava stockholders in an endeavor to get something out of the wreck of the Industrial Transportation Company which was adjudged a bankrupt in April, 1921. This agreement recited that the attorney was to take such steps as were necessary "to recover the sums opposite our respective names heretofore invested in the common and preferred stock of the Industrial Transportation Company." The amount that appeared opposite Dobyn's name was $250 as though he then had $250 invested in said stock. The above is the history in outline of this cause. Such additional facts as may be necessary will be stated in the course of the opinion.

The answer is not very definite, but it may be said to plead (1) that the note sued on was never delivered in the legal sense but was to be placed in escrow in plaintiff bank and there held until the store at Ava was established; (2) that in event the store was not established at Ava the note was to be returned to the defendant; and (3) that the bank took the note with knowledge of the agreement and is bound thereby.

Defendant in effect testified that when he signed and when the note was turned over to Cornett the understanding was that it was to be placed in plaintiff bank and there held until the store was put in at Ava, and that in the event the store was not put in the note was to be returned to him. The record shows that Dobyns and plaintiff bank were rather closely connected with and associated with Cornett during the stock sale campaign. The bank through Dobyns bought all or practically all the stock notes given in the Ava community and gave therefor time certificates drawing 4 per cent while the notes drew 8 per cent. But the view we take of the defense that the note at bar was to be returned to defendant in the event a store was not established at Ava makes it unnecessary to enter upon a consideration

of the escrow agreement. Also we might say that there is no direct evidence that Cornett was acting in bad faith in the sale of the store stock, or that he or Dobyns, plaintiff cashier sought to defraud anyone. The fact that stock purchasers were promised the return of their notes or money, if money was paid, is not inconsistent with our statement that there is no direct evidence of fraud. There is nothing to show that Cornett or Dobyns had any knowledge of the impending bankruptcy of the Industrial Transportation Company. In this connection we might also state that the evidence that the note was to be placed in escrow in plaintiff bank and there held until the store was established at Ava and in operation is not overabundant. We might also state here that Dobyns, the bank and Cornett were so connected and related respecting the sale of stock and notes that the bank is bound by whatever binding information and knowledge that came to Dobyns respecting the agreement upon which we make disposition of the cause.

Is the defense that the note was to be returned in the event the store was not established at Ava available? This is the only issue submitted below, and this issue was submitted in an instruction given on the court's own motion. Instructions offered by both plaintiff and defendants submitting other questions were refused. Plaintiff contends that the defense submitted will not lie for two reasons, viz.; (1) That the agreement, if there was such an agreement, was parol; and (2) that the agreement, even though it be considered as in writing, was collateral and independent and that plaintiff purchased prior to a breach thereof.

The instruction given is as follows: "The court instructs the jury that if they believe and find from the evidence that the agents of the Industrial Transportation Company procured defendants' note for $2000 in consideration for stock in said company and upon the understanding that the company was to establish a store in Ava, Missouri, on or before February 15, 1921, or return defendant's note or its face value. And that if the jury further believes and finds that the plaintiff bank bought defendants' note with notice that said note or its face value was to be returned unless said store was established and that said store was never established then they will find the issues for the defendants."

There was ample evidence tending to establish the issues submitted in the instruction. But if the agreement therein mentioned rests only in parol then it is not available as a defense. Evidence of a contemporaneous oral agreement that a note is to be payable only upon the happening of a certain contingency is not competent to defeat recovery on the note. [Smith v. Thomas, 29 Mo. 307; Jones v. Jeffries, 17 Mo. 577; Massmann v. Holcher, 49 Mo. 87; Farmers State Bank v. Sloop, 200 S. W. (Mo. App.) 304;

Third National Bank v. Heichart, 101 Mo. App. 242, l. c. 253, 73 S. W. 893; Christian University v. Hoffman, 95 Mo. App. 488, 69 S. W. 474; First National Bank v. Henry, 202 S. W. (Mo. App.) 281.] There was no specific separate contemporaneous dependent written agreement between Cornett and defendant executed at the time the note was signed or when turned over to Cornett that it would be returned if the store was not established, but at the time the note was turned over Dobyns had in his possession at the bank a letter written by the transportation company's zone managers which stated that all notes and money given for stock would be returned if the store did not go in. This letter, addressed to Dobyns as cashier of plaintiff bank, is as follows:

"Industrial Transportation Company
"Washington, D. C.
"Originators-Operators of Cost-Plus System
"Chain Store Groceries.
"Executive Offices:
"Suite 503 Laclede Gas Building,
"St. Louis, Mo.
"Manufacturers—Distributors
"Sales-Zone Managers
"Scott & Elessi
"315 Woodruff Building

"Springfield, Mo., Jan. 10, 1920

"Mr. V. S. Dobyns, Cashier
"Peoples Bank of Ava,
"Ava, Mo.
"Dear sir:

"Our Mr. Cornett advises that you are anxious to know as to whether or not, should the Industrial Transportation Co. fail to open a store in your town, that the investors in our securities would be protected.

"We have never gone into a town for the purpose of opening a store and selling our securities and made a failure of it.

"We only sell our securities where we open our stores, and you may be well assured that if any condition should arise (which we do not anticipate) that would make it impossible for us to put a store in Ava, we would cheerfully return to the investors their money (or notes) if they wanted same.

"In consideration of the above we naturally expect your fullest co-operation with Mr. Cornett.

"Yours very truly,
"SCOTT & ELESSI,
"Zone Managers."

This letter was written January 10th and defendant's note was dated January 13th, but was not turned over to Cornett for two or three days thereafter as defendant Allen M. Rankin mailed the note to his father for his signature and it was not received back until two or three days thereafter. The inference is that this letter was for the benefit of any one who might purchase stock. The question had been raised that there was nothing to show that the store would go in. Dobyns explained the origin of the letter as follows:

"Q. How did you come to get this letter? 'A. Well I felt that the bank was protected. But I felt like any conscientious banker ought to feel that the people ought to be protected that were buying this stock. Mr. Mathis had bought his, and these people were friends of mine, so as an extra precaution I asked Mr. Cornett what assurance we would have that the store would go in and if I bought these notes where those people would get off. I discussed it with him and he said he would write a letter. Then I got the letter purporting to be from Scott & Elessi."

From the evidence of Dobyns just quoted it would appear that at the time he asked Cornett "where these people would get off," he had already purchased some of the notes. But as all of the notes were dated on and subsequent to January 10th the inference could be drawn that at that time he had not bought any of the notes, and later he stated that he did not believe that he had bought any of the notes prior to getting the letter.

Defendant testified that before he executed the note "Mr. Cornett told me about Mr. Dobyns writing a letter to the zone managers." On direct examination defendant stated that Cornett showed this letter to him, but on cross-examination he stated that he had not seen the letter before he signed the note. But whether he had or not Cornett told him about Dobyns writing the zone managers, and repeated the promise made in the letter that the note would be returned to defendant if the store did not go in.

A negotiable promissory note and a contemporaneous collateral dependent written agreement connected by direct reference or by necessary implicated should be construed together as one contract, and such collateral dependent agreement is binding on the payee in the note and transferees with notice. [Brownlee v. Arnold, 60 Mo. 97; Simpson v. Van Lanningham, 267 Mo. 286, 183 S. W. 324; Citizens Bank of Edina v. Kreighauser, 211 Mo. App. 33, 244 S. W. 107; Allen County State Bank v. Central Stone Co., 205 Mo. App. 588, 226 S. W. 665; Pattonsburg Sav. Bank v. Koch, 255 S. W. (Mo. App.) 580; 8 C. J., p. 196, sec. 327.] On the question of notice Dobyns said: "I had the letter in my possession and knew that the company had agreed to return the notes or the money if the store wasn't put in. If they hadn't sold the notes they could

turn them back. I got the Rankin note three weeks or a month after I received this letter."

It is true that at the time the note was executed there was no separate written agreement executed such as existed in the Simpson Case, supra, and other similar cases, but the inference is that Cornett had caused the letter of January 10th to be written for the very purpose of obviating the necessity of a separate written agreement for each stock sale made. Any other inference would counter the good faith of Cornett and possibly of Dobyns too. In this situation we think that the agreement or promise in the letter should be considered as contemporaneous with and a part of the same contract of which the note is a part. The note and the letter constituted the contract between the Industrial Transportation Company acting through its agent Cornett on the one hand and defendant on the other.

In National City Bank v. Kirk, 134 N. R. (Ind.) 772, it appears that at the time notes were given it was orally agreed that the maker was to have time beyond maturity for the payment of the greater portion thereof and that this agreement should be confirmed by letter. Later a letter was written confirming the agreement. Discussing this feature the court used this language: "It is well settled that a note and a contemporaneous written instrument intended to control it, made between the same parties, should be read and considered together as if one form, where a controversy arises between the original parties, or those standing in their place or chargeable with notice of such contemporaneous agreement. [Citing cases.] It is obvious that the same rule is applicable where a note is supplemented by a contemporaneous oral agreement, subsequently reduced to writing in pursuance thereof, while said note is subsisting, as the writing relates back to the time of the execution of the note and is supported by the same consideration. This is in accord with the general rule that an agreement that is nonenforceable because it rests in parol may be rendered effective by reducing the same to writing."

It seems to us the reasoning as appears in the excerpt last quoted is in principle equally applicable to the facts of the instant case. There the notes were executed in consideration in part of the representation that a letter of confirmation would be written. Here the note was executed in consideration in part of the agreement that the note would be returned if the store was not established at Ava, and this agreement was then in writing and reference to the writing was made when the note was executed.

We heretofore handed down an opinion reversing the judgment and remanding this cause, but granted a rehearing. Our first conclusion was that the facts brought this cause within that line of cases where the contemporaneous collateral written agreement was independent; and where the holder of the note purchased the same before

maturity and for value, and before a breach of the collateral agreement or without knowledge of the breach. The leading case, in the line of cases where we at first thought the cause at bar belonged, is Jennings v. Todd, 118 Mo. 303, 24 S. W. 148, 40 Am. St. Rep. 373. [See, also, Bank of Laird, 188 Mo. App. 322, 175 S. W. 116; Levy v. Atrophone Co., 249 S. W. (Mo. App.) 158.]

It is our conclusion that our first ruling was erroneous. We think that the facts bring this cause within the law as announced in Simpson v. Van Lanningham, and other similar cases cited, supra.

Plaintiff's request for a directed verdict was properly refused. The decisive issue was propery submitted in the instruction given. The judgment should be affirmed and it is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.